LEONARD ORSINI, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*
(Wilmette Texaco, Appellants).

First District (Industrial Commission Division)   No. 1—85—883WC

Opinion filed April 9, 1986.

BARRY, J., dissenting.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (Francis J. Lynch, of counsel), for appellant.

Murges, Bowman & Corday, Ltd., of Chicago (John T. Bowman, of counsel), for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Wilmette Texaco, appeals from a judgment of the circuit court of Cook County reversing a decision by a three-to-two majority of the Industrial Commission denying a claim for workers' compensation benefits by petitioner, Leonard Orsini. The question is whether the trial court erred in finding as a matter of law that petitioner was entitled to benefits "because of the employer's acquiescence in the allowing of Orsini to work on his own vehicle during regular work hours." We affirm.

The essential facts are undisputed. Petitioner was employed by respondent as a mechanic at respondent's service station. When there was no other work to do, petitioner was permitted to work on his own automobile on the premises of the service station during regular work hours. On July 3, 1981, while waiting for parts needed to complete a job, petitioner was working on his own automobile during regular work hours. Peter Van Houton, owner of respondent, was aware that petitioner was doing this. Petitioner was adjusting the carburetor when the automobile lurched forward and pinned petitioner between the automobile and a work bench. This accident caused the injuries which are the subject of petitioner's workers' compensation claim. It was established by expert testimony for respondent that a defect in the transmission of petitioner's automobile caused it to lurch forward.

■ Where undisputed facts permit only one inference with respect to an issue, the issue becomes a question of law to be determined by the court. (*Union Starch, Division of Miles Laboratories, Inc. v. Industrial Com.* (1974), 56 Ill. 2d 272, 275.) In the case at bar

there is no dispute as to how petitioner was injured. The question is rather whether the undisputed facts entitle petitioner to workers' compensation benefits. Accordingly, the circuit court was correct in characterizing the question presented as one of law.

When an employee is injured while working on a personal project at his place of employment during regular work hours, his employer may be held liable if the employer had knowledge of or acquiesced in the employee's practice. (*Bradway v. Industrial Com.* (1984), 124 Ill. App. 3d 983, 985, 464 N.E.2d 1139, 1141; see 1A A. Larson, Workmen's Compensation Law sec. 27.31(b) (1982).) In the case at bar, petitioner's employer knew that petitioner was working on his own automobile during working hours when there was no other work to be done, and had acquiesced in this practice by petitioner. The circuit court was therefore correct in its decision that petitioner was entitled to workers' compensation benefits as a matter of law.

The two cases respondent relies upon most heavily as precluding recovery are inapposite. In *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, the injuries to the employee occurred after working hours. In *Mazursky v. Industrial Com.* (1936), 364 Ill. 445, a laundry truck driver, apparently during working hours, was injured while repairing a tire for his own car in his employer's garage. The employer had acquiesced in employees repairing their own cars in the garage in the past; however, the *Mazursky* court did not find this to be significant. The continuing validity of this aspect of *Mazursky* is questionable in light of more recent cases broadening the workers' compensation liability of employers based on acquiescence. (See, *e.g., Union Starch, Division of Miles Laboratories, Inc. v. Industrial Com.* (1974), 56 Ill. 2d 272, 277.) Also, the *Mazursky* opinion does not reveal whether the repairs previously acquiesced in had been made during or outside of working hours, so it is impossible to ascertain whether the claimant's repairs were performed in the manner his employer had permitted. (See *Bradway v. Industrial Com.* (1984), 124 Ill. App. 3d 983, 986, 464 N.E.2d 1139, 1141-42.) We therefore do not believe *Mazursky* controls the issue in this case.

Finally, we note that courts in several other States have allowed recovery for injuries incurred by employees working on personal projects at their places of employment during regular work hours where the employer had knowledge of or acquiesced in the practice of their employees. See, *e.g., Parker v. Travelers Insurance Co.* (1977), 142 Ga. App. 711, 236 S.E.2d 915; *Penzara v. Maffia Brothers* (1954), 307 N.Y. 15, 119 N.E.2d 570; *W. R. Grace & Co. v. Payne* (Ky. 1973), 501

S.W.2d 252; *Hanchette v. Brezner Tanning Co.* (1966), 107 N.H. 236, 221 A.2d 246; *Lee v. F. M. Henderson & Associates* (1973), 284 N.C. 126, 200 S.E.2d 32; *Watkins v. City of Wilmington* (1976), 290 N.C. 276, 225 S.E.2d 577; *Chrisman v. Farmers Cooperative Associates* (1966), 179 Neb. 891, 140 N.W.2d 809; *J. & G. Cabinets v. Hennington* (1980), 269 Ark. 789, 600 S.W.2d 916.

The foregoing is sufficient to dispose of the issue raised. Certain points made in the dissent, however, merit further comment.

The main thrust of the dissent is that mere acquiescence of the employer is not sufficient to satisfy the requirement that an injury arise out of a claimant's employment to be compensable. In the case at bar, there was more than mere acquiescence by the employer to indicate that the injury arose out of petitioner's employment. First, petitioner had permission from his employer to work on his own car when there were slack periods. Second, he was injured while performing a task which, if performed on a customer's car, would unquestionably have been within the ordinary scope of his employment duties.

Petitioner was a mechanic. He was not injured while repairing his television set or the like but rather while making an adjustment on his automobile. The dissent argues that any expertise developed by petitioner in adjusting the carburetor on such "an antique vehicle" as his 1967 Oldsmobile would not benefit his employer. The description of a 14-year-old automobile as an "antique" is a bit extreme. Moreover, although the Industrial Commission made a similar observation with respect to benefit to the employer, the record does not appear to support the dissent's implicit assumptions that (1) petitioner's employment did not require him to work on older cars and (2) adjustment of the carburetor in the 1967 Oldsmobile differs radically from the adjustments required in newer automobiles. The dissent also makes a point of the defective "junkyard" transmission which caused the accident. It is true petitioner obtained the transmission from an automobile boneyard—a logical place to look for a reasonably priced, used, major part for an old automobile. The fact is, however, irrelevant to whether the injury is compensable. If the injury had occurred while working on a customer's automobile, it would clearly have been compensable, regardless of the condition and origin of the offending transmission, and regardless of the age of the automobile.

The dissent goes through an extensive and illuminating discussion of the Illinois cases following and distinguishing *Mazursky v. Industrial Com.* (1936), 364 Ill. 445, and in so doing demonstrates the difficulty of reconciling them all. *Mazursky* and *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, seem

the closest to the case at bar; however, in both cases, the claimants were injured performing tasks outside of the ordinary scope of their employment duties. In *Mazursky,* the claimant was a laundry truck driver injured repairing a tire for his car. In *Fisher Body,* the claimant was a "fork and tier" truck driver injured by a battery which exploded while he was trying to start his car. In contrast, petitioner here was a mechanic, whose ordinary duties included mechanical work on automobiles, who was injured while doing mechanical work on an automobile. Most of the cases from other jurisdictions, which the dissent ignores, are factually similar to the case at bar in this regard. *Parker v. Travelers Insurance Co.* (1977), 142 Ga. App. 711, 236 S.E.2d 915 (employee whose duties included being a part-time mechanic injured working on his own car); *Penzara v. Maffia Brothers* (1954), 307 N.Y. 15, 119 N.E.2d 570 ("handyman" in automobile supply and machine shop injured while making a part for his car in machine shop); *Lee v. F. M. Henderson & Associates* (1973), 284 N.C. 126, 200 S.E.2d 32 (employee whose duties included working part time in a cabinetmaking shop injured while working in shop on a personal woodworking project); *Chrisman v. Farmers Cooperative Association* (1966), 179 Neb. 891, 140 N.W.2d 809 (service station manager whose duties included making adjustments and minor repairs on customers' automobiles injured repairing his own automobile); *J. & G. Cabinets v. Hennington* (1980), 269 Ark. 789, 600 S.W.2d 916 (worker in cabinet shop injured while using shop's equipment to make project for self).) Although the other foreign jurisdiction cases may support a broader rule, making employer acquiescence alone enough to satisfy the arising-out-of-the-employment requirement, it is unnecessary to consider the soundness of that rule in the case at bar where the employer gave his permission to the employee to work on his own car and where the injury occurred while petitioner was performing a task within the ordinary scope of his employment duties.

A final point about the implications of the dissent's position. In the case at bar, where there is no indication that the accident occurred as a result of the employer's negligence, the employer would not be liable under the worker's compensation act or a common law negligence theory. But if the accident had been caused by the negligence of the employer, if for instance the injury had occurred due to a negligently maintained lift malfunctioning while petitioner was changing his car's oil, the situation would be quite different. Presumably the employer, who was in effect providing a fringe benefit to petitioner by permitting him to work on his own automobile during slack times, would be liable to the full extent permitted under the tort sys-

tem. By giving his employee the benefit of working on the employee's own car, the employer would have unwittingly exposed himself to a liability he could have avoided by being less benevolent. The dissent in distinguishing the case of *Union Starch, Division of Miles Laboratories, Inc. v. Industrial Com.* (1974), 56 Ill. 2d 272, finds significant that "the risk exposure was increased by the condition of the employment premises." If this principle were to apply to the example just recited, the result would be antithetical to the whole premise on which the workers' compensation system is based. Then, if the employer was without fault, the workers' compensation act would not apply and the employer would have no liability whereas if the employer was at fault the act would apply and the employer would obtain the benefits of the recovery limits of the act. Such a "heads the employer wins/tails the employee loses" approach would obviously be unsound.

The judgment of the circuit court of Cook County is therefore affirmed.

Affirmed.

WEBBER, P.J., and KASSERMAN and McNAMARA, JJ., concur.

JUSTICE BARRY, dissenting:

I disagree with the result reached by the majority. Also I believe that *Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 4 N.E.2d 823, even though a 1936 decision, is viable and controlling. I must observe, however, that the potential benefit to Mazursky's employer might today be given more consideration.

The majority fails to acknowledge that the overriding two-pronged test for determining compensability is whether the injury arose out of and in the course of the employment. However, certainly within a proper factual setting the evidence of acquiescence by the employer may determine whether the injury arose out of his employment. Even unreasonable or unusual conduct, if known and acquiesced in as a matter of custom or practice, may result in liability.

The cases standing for the latter proposition are decisions affirming the Commission's determinations on questions of fact regarding the existence of knowledge or acquiescence. The determinations of the Commission control the outcome in each case, and in each case the occurrence was upon employer premises. See *Sunnyside Coal Co. v. Industrial Com.* (1920), 291 Ill. 523, 126 N.E. 196, where the question

was whether exchange of work by employees was acquiesced in by the employer—award granted; *Payne v. Industrial Com.* (1920), 295 Ill. 388, 129 N.E. 122, where the question was whether horseplay causing death was known to the employer—award denied; *Bradway v. Industrial Com.* (1984), 124 Ill. App. 3d 983, 464 N.E.2d 1139, where the question was whether employer acquiesced in practice of using company materials to make personal items—award denied.

However, in the instant case we have a question of law, as indicated by the majority opinion, with the facts not in dispute. The same was true in *Mazursky*, where a laundry truck driver was injured while repairing his personal auto tire on the employer's premises during work hours. On occasion he would use his auto for late deliveries while enroute home. These practices were acquiesced in by the employer. The supreme court there said that the injury must both arise out of the employment and must occur while in the course of the employment, that "[i]t is not alone sufficient that the injury was received by the employee in the course of his employment but it must arise while he was acting within the *duties* of his employment or in some act incidental thereto." (Emphasis added.) (*Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 448, 4 N.E.2d 823, 825.) The court indicated that to justify an award of compensation the injury must come from a hazard to which the employee would not have been equally exposed apart from his employment and that "[e]ven though the accident happens on the employer's premises, yet if it occurs while the employee is doing something there for his own personal benefit it does not arise out of his employment." (*Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 449, 4 N.E.2d 823, 825-26, citing *Industrial Com. v. Enyeart* (1927), 81 Col. 521, 256 P. 314; *Board of Education v. Industrial Com.* (1926), 321 Ill. 23; Angerstein on Workmen's Compensation sec. 117, at 255 (1930).) The court also found that Mazursky was performing an act of a personal nature for his own convenience, not within the sphere or scope of his employment, an act outside a risk connected with his employment. The court confirmed the Commission's denial and found that the award of compensation was not warranted, thus reversing the circuit court.

Through the decades *Mazursky* has been often cited with approval, and occasionally distinguished. In *City of Chicago v. Industrial Com.* (1941), 376 Ill. 207, 210, 33 N.E.2d 428, 429, where the uncontroverted facts were insufficient to find a causal connection between an election clerk's authorized duties and his death, the supreme court reversed an award indicating "[a]n injury may be said to arise out of the employment when, upon consideration of all the circum-

stances, there is apparent to the rational mind a causal connection between the injury and a danger peculiar to the work, and it does not result from a hazard to which the employee would have been equally exposed apart from his employment. [Citations.]" In *Farley v. Industrial Com.* (1941), 378 Ill. 234, 37 N.E.2d 787, the facts were not in controversy. The question was whether the injury which arose out of a slip and fall accident on the ice on a public way when the employee was enroute to work with the employer's cash receipts from the prior day's business activity, as ordered by the employer, was compensable. The supreme court reversed the award, approving the findings in prior cases, and said the injury must arise while acting within the duties of employment—which impose a greater danger upon the employee than upon other persons using the streets. (Obviously, as in *Mazursky*, benefit to the employer was given little consideration.)

In a 1947 common law setting case the First District Appellate Court described *Mazursky* as an injury arising out of an act of a personal nature and not compensable even though occurring on the employer's premises. (*Lyons v. Michigan Boulevard Building Co.* (1947), 331 Ill. App. 482, 73 N.E.2d 776.) At the same time, that court recognized that the Workmen's Compensation Act should be liberally interpreted to attempt to bring an employee's claim within the Act. The court quoted with approval from *Illinois Country Club, Inc. v. Industrial Com.* (1944), 387 Ill. 484, 488, 56 N.E.2d 786, 788: "The mere fact that an employee was present at the place of injury because of his employment will not suffice unless the injury itself is a result of some risk of the employment. [Citations.] [A]n injury *** which comes from a hazard to which the employee would have been equally exposed apart from the employment, does not arise out of the employment, as the causative danger must be peculiar to the work and not common to the neighborhood and the public."

In *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, 240 N.E.2d 694, the petitioner, an employee of the Fisher Body Division of the General Motors Company, at 1:30 a.m. after having worked an overtime shift, tried unsuccessfully to start his car in the company parking lot. The temperature was below zero. The company made available a maintenance truck and booster battery for starting such employees' stalled cars and on this occasion, in addition, three men were furnished to help. One of the men connected the cables and when his hands got cold the claimant took over. His auto battery blew up in his face. Obviously there was more than mere acquiescence on the part of the employer; there was active approval with men and equipment supplied. The supreme court

held that it was a risk personal to the employee and not compensable, that the risk was not one connected with what the workman had to do in fulfilling his duties, and that the accident did not result from some risk incidental to his employment. Citing *Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 4 N.E.2d 823, the court said:

> "[W]orking on one's personal automobile is not ordinarily related or incidental to the duties for which he is employed, even though the work may be done on the employer's premises. [Citations.]

> \* \* \*

> [N]either the duties of his employment nor the fact that his car was in the parking lot significantly increased the danger of injury from working on his own car, a strictly personal activity.

> \* \* \*

> The purpose of the Workmen's Compensation Act is to protect the employee against risks and hazards which are peculiar to the nature of the work he is employed to do. [Citation.] Injuries resulting from risks personal to the employee are not compensable." (*Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, 516-17, 240 N.E.2d 694, 695-96.)

Observing the question to be one of law because the facts were not in dispute, the court reversed and ordered the award set aside.

In *Material Service Corp., Division of General Dynamics v. Industrial Com.* (1973), 53 Ill. 2d 429, 212 N.E.2d 367, the deceased employee, Mrs. Hedrick, as authorized to do during meal break time, went to the employer parking lot on a bitterly cold night, and it appears drove her car into an adjoining canal, and drowned. Justice Underwood, distinguishing risks and circumstances, stated, "Mrs. Hedrick was not engaged in the kind of strictly personal activity giving rise to the type of risks personal to the employee involved in the *Mazursky* and *Fisher Body* cases," (53 Ill. 2d 429, 436, 292 N.E.2d 367, 371) and affirmed the trial court order awarding benefits. Justice Underwood described *Mazursky* and *Fisher* as cases where the employees undertook to repair their own automobiles, assuming risks that were strictly personal, unrelated to the duties of employment or the condition of the employer's premises.

In 1973, Justice Eberspacher for the Fifth District Appellate Court, in a common law setting, *Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 297 N.E.2d 610, cited *Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 4 N.E.2d 823, with approval and said, "[I]f it occurs while the employee is doing something there for his own per-

sonal benefit, it does not arise out of his employment." (12 Ill. App. 3d 453, 461-62, 297 N.E.2d 610, 616.) Thereafter in 1973, in *Moss Equipment v. Industrial Com.* (1973), 55 Ill. 2d 261, 302 N.E.2d 271, Justice Underwood for the court refused to reject the Commission's resolution of conflicting facts, thereby finding *Mazursky* and *Fisher* distinguishable.

*Union Starch, Division of Miles Laboratories, Inc. v. Industrial Com.* (1974), 56 Ill. 2d 272, 307 N.E.2d 118, was decided by our supreme court in 1974. The "material" facts were not disputed. The claimant was working the 3 p.m. to 11 p.m. shift in a refinery building, and there was no set time for the evening meal or a break period. About 5:30 p.m. the claimant got himself a soft drink and exited the building to an adjoining roof area "to get fresh air," as appeared was the practice. Customarily, it was some other roof areas where the employees ventured to get fresh air. There were no warning signs, and the claimant did not know that the roofs were differently constructed. The roof in question gave way, and he was injured by his fall to the ground. The court decided that the Commission could reasonably infer that the condition of the premises (roof) was a causative factor and that the employment did increase the risk exposure as in *Material Service,* thereby satisfying the "arising out" element. As to the "in the course of" element, the court decided that since there was no general prohibition against seeking refuge on the roofs for fresh air, an act of reasonable personal comfort, the element was satisfied. The court refused to set aside the award. I would distinguish this case on the ground that the court found that the claimant was doing something necessary to satisfy his employment duties; that the risk exposure was increased by the condition of the employment premises. Therefore, a causative connection with the injury properly was found for an award.

Though it appears that the benefit, or lack of benefit, to the employer may not be determinative, whether there is an identifiable risk from the employment that contributes to the injury is most significant. In the instant case, certainly there was no "greater danger" circumstance presented by the employment premises that contributed to the injury. Obviously, in fact, just the opposite circumstances are here the case. Orsini was merely allowed to do something solely for his own benefit. The testimony was that he had nothing to do for his employer, that he had overhauled the "junkyard" transmission on his car about three months earlier, that the transmission was defective because of a missing retaining pin, and that the absence of the retaining pin was the reason for the lurching of the automobile, causing his in-

jury. Also, the automobile was about 14 years old, a 1967 Oldsmobile 442. It does not appear that to develop expertise in the repair of such an antique vehicle would be of even slight benefit to the operation of the auto repair business of this respondent employer.

I cannot agree that mere acquiescence without an identifiable risk of employment or a greater danger as an incident of the employment should mandate compensability when the act performed is for purely personal purposes. Though the injury here occurred during working hours on the employer's premises, thereby satisfying the "in the course" prong, the same cannot be said with regard the "arising out of" prong. I would deny any award.