GERALD E. CURTIS, Appellant, v. THE INDUSTRIAL COMMISSION (The City of Alton, Appellee).

Fifth District (Industrial Commission Division) No. 5—86—585WC

Opinion filed July 23, 1987.

Paul A. Guzzardo, of Calvo & Guzzardo, of Granite City, for appellant.

G. Edward Moorman, of Williamson, Webster, Groshong, Moorman & Falb, of Alton, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Petitioner Gerald E. Curtis filed an application for adjustment of

claim for burn injuries sustained during his lunch period while employed by respondent, the City of Alton. An arbitrator denied the claim after finding that the injuries did not arise out of and in the course of petitioner's employment. The Industrial Commission affirmed the arbitrator's decision, and the circuit court of Madison County confirmed the Commission's decision.

Petitioner was employed by respondent as a truck driver and general laborer in street maintenance for 15 years. On August 4, 1982, petitioner asked James Corwin, the employee in charge of respondent's main garage, for permission to take home a barrel of waste gasoline from the garage. Petitioner intended to use the gasoline either for greasing his hogs or as fuel for his tractor. Corwin gave petitioner permission, but told petitioner the gasoline was probably worthless. Corwin also told petitioner not to take the barrel itself because there was a deposit on it.

Petitioner asked a fellow employee, John Watts, to help him load the barrel into petitioner's personal pickup truck. Petitioner then drove the truck over to a nearby municipal washrack. The washrack is a building with a sliding overhead door where city vehicles are washed. Petitioner and Watts tipped the barrel and poured some of the gasoline into a bucket which petitioner kept in the truck. Petitioner then decided that he could not use the liquid.

At that point, one of the two bungs in the barrel came off and gas began to pour out. The two men began to flush the gas down the drain with a water hose. Petitioner suddenly saw a flash as the gas ignited. The two men ran out of the building and petitioner hit the control to lower the overhead door, which had been open. As a result of the fire, petitioner sustained serious burns on both arms and on the side of his face and ear.

Petitioner testified further that he had never taken waste gasoline from the garage prior to that date and did not know of any other employee who had done so. Petitioner raises hogs in his spare time and had previously used respondent's waste oil for his hogs. In addition, prior to the accident, petitioner and other employees had often washed their personal vehicles in the washrack, either during the lunch hour or after work. Occasionally, when one employee was having trouble with his car, several co-workers would meet him at the washrack and help fix the car. It was not necessary to ask permission to work on personal cars at the washrack, and sometimes the supervisor would help with the work. Petitioner had also used the washrack to wash the superintendent's car. In addition, employees washed paint equipment and then flushed paint and thinner down the drain in the

washrack.

Respondent introduced into evidence an executive order issued on July 10, 1980, by the mayor of Alton. The order prohibited city employees from remaining in the complex beyond 15 minutes after their shift ended; from working on their privately owned vehicles on city property or using city tools for that purpose; and from lingering in the complex after working hours. Petitioner testified that he never saw the executive order prior to his accident, but that it had been posted subsequently.

Clinton Everage, Aaron Lovett, and Stephen Sanders, who had been employees of respondent for over 10 years, testified for petitioner. The three men had taken home waste oil from respondent's main garage either for use on their hogs or in their gardens to kill weeds, or had used the washrack to wash or repair their personal vehicles. Everage had seen waste oil, gas and paint thinner poured down the drain in the washrack and had seen it dumped in a field. Everage and Sanders had not seen the 1980 executive order prior to petitioner's accident. Lovett had seen the order when it was first issued, but believed that the order was generally disregarded.

James Corwin, a parts manager, testified for respondent that on the day of the accident, Corwin was in charge of the garage. Corwin may have had a conversation with petitioner regarding the gasoline, but he did not recall petitioner asking for the gasoline, and denied ever giving permission to take the gasoline. If he had known the gasoline was worthless, he would have so informed the petitioner. Corwin was at home eating when petitioner took the gasoline.

Corwin believed that at the time of petitioner's accident the policy at the garage was that no personal vehicles were to be worked on at the garage or washrack. He was aware of the 1980 executive order. When asked if it was enforced, Corwin answered, "Yes and no." He explained that it was possible that employees worked on their cars in the washrack, but when a supervisor told the employees to move the cars, the employees would comply because they knew they were not supposed to work on their vehicles. Corwin was not aware that any employees used waste oil for greasing their hogs. The waste gas and oil were usually taken to the top of a hill and poured over the ground. There was a $20 deposit on each barrel.

James L. Purlee, streets superintendent of public works in 1982, testified for respondent that he never authorized petitioner to take gasoline from the garage for his own use. Purlee was at home when petitioner was injured. Corwin, among other people, had the authority to tell the workers what to do.

Don Twichell, the Alton fire chief, testified for respondent that in his opinion the gasoline fumes ignited when a water heater in the back of the washrack turned on. The door to the washrack was down when the firemen arrived. In Twichell's opinion, the door was down when the explosion occurred because glass from the windows in the door was found outside the building. Twichell did not believe that the fumes would have caused an explosion if the door had been up. If all the doors had been open in the building, the fire probably would not have occurred. Transferring gasoline from one container to another inside a building was an extremely dangerous activity.

On June 30, 1984, the arbitrator found that petitioner, not Corwin, presented a more credible version of the conversation regarding taking the gasoline. In addition, Everage's testimony that gasoline had been flushed down the drain was sufficiently rebutted by other evidence. The arbitrator found that petitioner voluntarily undertook a course of action for his own benefit which exposed him to a risk greater than that to which he would have been exposed had he been pursuing his assigned duties at his designated work area. The injuries did not occur in the course of the employment because they did not occur in a place where he would normally perform his duties. While respondent had allowed some activities in relation to employees' personal use of waste oil and the washrack, this did not constitute authorization of or acquiescence in the transfer of gasoline from a barrel to buckets in the washrack. The arbitrator concluded that petitioner's injuries did not arise out of and in the course of the employment. The Commission adopted the findings and decision of the arbitrator. The trial court confirmed the Commissioner's decision, and petitioner appeals.

Petitioner contends that the trial court judgment confirming the decision of the Commission is incorrect as a matter of law and is against the manifest weight of the evidence. The trial court characterized the issue in this case as a question of law regarding undisputed facts. Where the material facts are undisputed, and no conflicting inferences can be drawn from the facts, the issue of whether an employee's injuries arose out of and in the course of his employment is a question of law. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 362 N.E.2d 325.) Decisions of the Commission on questions of law are not binding on a reviewing court. *Butler Manufacturing Co. v. Industrial Com.* (1981), 85 Ill. 2d 213, 422 N.E.2d 625.

Here, while there is no dispute regarding how petitioner was injured, conflicting inferences can be drawn as to whether respondent

had knowledge of and acquiesced in petitioner's conduct. (See *Chicago Extruded Metals v. Industrial Com.* (1979), 77 Ill. 2d 81, 395 N.E.2d 569.) When the Commission's decision is based upon permissible inferences, we will not disturb it unless it is against the manifest weight of the evidence. See *Orsini v. Industrial Com.* (1987), 117 Ill. 2d 38; *Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 412 N.E.2d 492; *Chicago Extruded Metals v. Industrial Com.* (1979), 77 Ill. 2d 81, 395 N.E.2d 569; *Yost v. Industrial Com.* (1979), 76 Ill. 2d 548, 394 N.E.2d 1189.

Petitioner argues that the Commission and the trial court misunderstood and misapplied the concept of "arising out of" employment. Petitioner maintains that his injury arose out of his employment because the fire was a result of a combination of respondent's gasoline and a spark from respondent's hot water. He asserts that the trial court abandoned the "arising out of" analysis and substituted its own criteria of whether the employee was injured while performing a task he normally performs in the place he normally works. We believe, however, that petitioner confuses the dual requirements of a worker's compensation claim.

■■ In order to recover benefits under the Workers' Compensation Act, the injury must both arise out of and in the course of employment. (Ill. Rev. Stat. 1985, ch. 48, par. 138.1; *Orsini v. Industrial Com.* (1977), 117 Ill. 2d 38.) An injury arises out of employment when a causal connection exists between the employment and the injury such that the injury has its origins in some risk incidental to the employment. (*Technical Tape Corp. v. Industrial Com.* (1974), 58 Ill. 2d 226, 317 N.E.2d 515.) Whether petitioner's injury arose out of his employment, however, is not the determinative issue here. *Cf. Orsini v. Industrial Com.* (1987), 117 Ill. 2d 38 (where court focuses on "arising out of" issue after it finds that the employee was injured while working on his personal car, that the injury was the result of a defect in the employee's car and not the result of any condition involving the employer's property, and that the injury could have occurred anytime or anywhere and only coincidentally occurred on the employer's premises).

■■ The critical question in the present case concerns whether petitioner's injury occurred during the course of his employment. (See *Union Starch, Division of Miles Laboratories, Inc. v. Industrial Com.* (1974), 56 Ill. 2d 272, 307 N.E.2d 118.) Whether an injury occurs "in the course of" employment depends on the time, place and circumstances under which the accident takes place. (*Union Starch, Division of Miles Laboratories, Inc. v. Industrial Com.* (1974), 56 Ill.

2d 272, 307 N.E.2d 118.) If the injury occurs within the time period of employment, at a place where the employee can reasonably be expected to be in the performance of his duties and while he is performing those duties or doing something incidental thereto, the injury is deemed to have occurred in the course of his employment. *Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 412 N.E.2d 492.

■■ In the present case, the injury occurred during petitioner's lunch period at the washrack, which is not a place where petitioner reasonably would be in the performance of his work duties as a truck driver and while draining waste gasoline for his tractor or hogs. Most significantly, his actions were not incidental to his duties as a truck driver. At the time of his injury petitioner was engaged in a self-benefiting activity not within the scope of his ordinary duties. Thus, the injury did not occur in the course of his employment.

■■■ Petitioner contends, however, that the injury is compensable because respondent knew that employees used the washrack for personal projects and because respondent gave petitioner permission to take the waste gasoline. Self-benefiting activities by the employee to which the employer acquiesces, or for which the employer allows the use of its property, have been held to be within the course of employment. When an employee is injured while working on a personal project on his employer's premises, one factor which is considered in determining whether the employer is liable concerns whether the employer had knowledge of or acquiesced in the employee's practice. (*Bradway v. Industrial Com.* (1984), 124 Ill. App. 3d 983, 464 N.E.2d 1139; see generally, IA A. Larson, Workmen's Compensation Law sec. 27.31(b) (1985).) If an employee voluntarily and in an unexpected manner exposes himself to a risk outside any reasonable exercise of his duties, a resulting injury will not be within the course of employment. (*Segler v. Industrial Com.* (1980), 81 Ill. 2d 125, 406 N.E.2d 542; *Bradway v. Industrial Com.* (1984), 124 Ill. App. 3d 983, 464 N.E.2d 1139.) However, even if the employee acted unreasonably, under certain circumstances the injury may be compensable if the employer had knowledge of or acquiesced in such unreasonable conduct. *Yost v. Industrial Com.* (1979), 76 Ill. 2d 548, 394 N.E.2d 1189.

The Commission found petitioner's testimony that Corwin gave him express permission to take the gasoline, as long as he left the barrel, to be credible. Furthermore, the record shows that respondent generally had knowledge of, and acquiesced in, certain non-work-related activities of its employees. Respondent allowed employees to take waste oil home; permitted employees to use the washrack to

wash or repair their cars; and allowed employees to flush paint thinner down the drain. The Commission discounted Everage's testimony that oil and gas had previously been washed down the drain, and that finding is supported by the testimony of respondent's own witnesses. This evidence, however, does not necessarily demonstrate that respondent knew of, or acquiesced in, petitioner's conduct in transferring gasoline to different containers inside the washrack.

 While the Commission might have inferred from these facts that respondent had knowledge of the type of activity which resulted in petitioner's injuries, the Commission could also reasonably infer that respondent did not acquiesce in petitioner's lunch hour activities. Any express permission or acquiescence by respondent was limited to the taking of waste oil and gas and the use of the washrack for washing or repairing cars. The permission or acquiescence did not extend to conduct such as that which injured petitioner. The distinction is significant because of the danger inherent in pouring gasoline in a closed building where fumes may quickly build up and be ignited by sparks from the three water heaters. There was no evidence that any employee had ever previously asked to take home waste gasoline; that gasoline was ever transferred by employees from barrels to other containers in the washrack; or that gasoline was ever permitted near the hot water heaters in the washrack. Furthermore, it was not petitioner's decision to take home the waste gasoline that caused his injury. Petitioner's conduct in pouring gasoline in a closed area near functioning water heaters was certainly not the inevitable consequence of respondent's permitting employees to take home waste oil or to work on their cars in the washrack building. See *Yost v. Industrial Com.* (1979), 76 Ill. 2d 548, 394 N.E.2d 1189.

It is within the unique province of the Commission to draw inferences from the facts presented and to determine whether the injury is compensable. (*Segler v. Industrial Com.* (1980), 81 Ill. 2d 125, 406 N.E.2d 542.) Based on the evidence before it, the Commission could reasonably infer that petitioner, by pouring the gasoline in the washrack, voluntarily undertook the risk of burn injuries, a risk with which the employment had no connection. (See *Yost v. Industrial Com.* (1979), 76 Ill. 2d 548, 394 N.E.2d 1189.) The Commission could properly conclude that the express permission, knowledge of, and acquiescence in activities unrelated to work duties did not encompass the activities which resulted in petitioner's injuries. The Commission's finding that respondent did not have knowledge of or acquiesce in the transfer of volatile gasoline to buckets in the washrack and flushing the gasoline down the drain was not against the manifest weight of

the evidence. (See *Bradway v. Industrial Com.* (1984), 124 Ill. App. 3d 983, 464 N.E.2d 1139.) Moreover, the Commission's conclusion that petitioner's injuries did not arise out of or in the course of his employment was not improper as a matter of law.

Petitioner's reliance on *Eagle Discount Supermarket v. Industrial Com.* and *Union Starch v. Industrial Com.* is misplaced. These cases are helpful in regard to general principles concerning whether an injury occurred in the course of employment when the activity was not directly related to work. Both cases, however, involve the personal comfort doctrine. Under that doctrine, certain lunch hour injuries relating to an employee's personal comfort, such as recreation or stepping outside for fresh air, are incidental to employment, and thus within the course of employment. (See generally IA A. Larson, Workmen's Compensation secs. 21.00 to 21.84 (1985).) Thus, while the general principles are instructive, the holdings are readily distinguishable on the basis of clearly different factual settings. The present case does not involve petitioner's personal comfort or relaxation activities during the lunch hour. Instead, petitioner was engaged in an activity performed for his own benefit in the hope that he could obtain free gasoline for his tractor or free oil for his hogs. As we have stated, this activity was not in any way incidental to his employment as a truck driver and laborer for respondent.

Petitioner also argues that it would be an anomaly if his injuries were not compensable but Watts' injuries were compensable, *e.g.*, if Watts' normal work duties included pouring paint thinner down the drain into which petitioner poured the gasoline. This hypothetical situation is not before us.

Finally, petitioner contends that as a matter of public policy and principles of occupational safety, respondent should better supervise its employees and better safeguard city property. Petitioner points out that the city's 1980 directive prohibiting the personal use of city property, and prohibiting the presence of employees on city property during off-duty hours, was not enforced until after petitioner's accident in 1982. The purpose of the Act is to protect employees against risks and hazards peculiar to the nature of the work they are employed to perform, and injuries from risks personal to the employee are not compensable. (*Orsini v. Industrial Com.* (1987), 117 Ill. 2d 38; *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, 240 N.E.2d 694.) As we have stated, petitioner's activities at the time he was injured were not the work which he was employed to perform. Petitioner removed himself from the Act's protection when he unreasonably subjected himself to a risk

which respondent could not be expected to guard against under its safety practices.

For the foregoing reasons, the judgment of the circuit court of Madison County, confirming the decision of the Industrial Commission, is affirmed.

Judgment affirmed.

WOODWARD, McCULLOUGH, and KASSERMAN, JJ. concur.

PRESIDING JUSTICE BARRY, specially concurring:

I concur with the result reached in the majority opinion. However, I cannot subscribe to all of my colleagues' reasoning. In my opinion, the fact that the petitioner was performing a self-benefiting activity and that such activity was not within the duties of his employment, as found below, defeats a finding that petitioner's injury "arose out of" his employment. See *Orsini v. Industrial Com.* (1986), 142 Ill. App. 3d 540, 548-50, 491 N.E.2d 1360, 1366-67 (Barry, J., dissenting).

As the majority correctly concludes, there was evidence presented here supporting the Commission's determination that petitioner's injury neither arose out of nor in the course of his employment. Because that determination is not contrary to the manifest weight of the evidence, I agree that the circuit court's judgment should be affirmed.