GERALD D. HINES INTERESTS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Patrick Heneghan, Appellee).

First District (Industrial Commission Division)   No. 1—89—0273WC

Opinion filed November 9, 1989.—Rehearing denied January 8, 1990.

914

Robert B. Hess, of Freeborn & Peters, of Chicago, for appellant.

Michael W. Rathsack, of Chicago (Neal B. Strom, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Patrick Heneghan, sought worker's compensation benefits after injuring his shoulder and head while working for respondent, Gerald D. Hines Interests. An arbitrator awarded $445.34 per week for 35 weeks as temporary total disability benefits and found that the disabling condition had not yet reached a permanent condi-

tion. The Industrial Commission (Commission) affirmed that award, and the circuit court of Cook County confirmed the Commission's decision. Hines appeals, contending that claimant fell while using an unsafe method to enter his work area merely because he was afraid to tell his employer he had locked his keys in the room. Consequently, Hines urges that claimant's injury resulted from a personal risk and that the Commission's award was either error as a matter of law, or against the manifest weight of the evidence.

Claimant worked as an engineer for Hines in Three First National Plaza in Chicago. He operated the heating and air-conditioning unit in the subbasement. At 5 p.m. each day, claimant had to adjust the unit to avoid damage to the machinery when one-half of the building's fans shut down. On December 29, 1986, claimant met with his supervisor, chief engineer Jim Collins, from 3 p.m. to 5 p.m. for his annual review. His prior work evaluations had been poor. Among other things, he had been admonished for not providing proper environmental control in the building. His March 1986 evaluation was poor. In August 1986, he was warned that he had better find another job by year's end. The December 29, 1986, evaluation, however, was improved, and claimant was elated.

Following the meeting with Collins, claimant returned to the subbasement to make the 5 p.m. adjustments, but discovered he had locked his keys in the subbasement and could not gain access to the room. Claimant had previously entered the room through the hatchway located between the basement and the subbasement. The hatchway is 20 to 30 feet from the subbasement floor, and measures about 7 feet by 4 feet. It is used to raise and lower equipment to the subbasement because there is no access from the street.

Claimant hooked an industrial mop bucket onto an electric hoist to lower himself into the room. A janitor helped him. After being lowered six feet, claimant realized it would not work. Several people tried to pull him up, but claimant fell, injuring his head and shoulder. He next remembered people in the hatchway yelling at him to open the subbasement door because they could not get in to help him.

Claimant stated that there were alternatives he did not use, including breaking into a glass key box for extra keys. Claimant, however, wanted to avoid any repercussions from his employer for locking himself out of the subbasement. He "felt silly" and embarrassed because he had just received his first good evaluation minutes earlier. Claimant carried a radio, but could not contact another engineer because he was the only engineer on duty. Management personnel had keys, but they usually left at 5 p.m. Electric strike plates controlling

the locks can be turned off, but the strike on that door did not work. He did not want to call Collins at home.

Collins testified that claimant could have called security to have the electric door strikes released. One door strike did not work, but the other door strike was operating. Moreover, security could have contacted management to get a key. In addition, each engineer had access to a glass key box which could be broken open to get another key. Moreover, the machines would not have suffered expensive bearing damage if the fans were not shut down unless it happened on a daily basis. Claimant had been disciplined once before, however, for not properly operating the equipment. To perform his duties adequately, claimant was to get to the machines each day at 5 p.m. or as soon as practicable.

The arbitrator viewed the scene of the accident. He found that claimant's acts were not purely personal, and although negligent, were still within the scope of his employment. The arbitrator concluded that claimant's injuries arose out of and in the course of his employment. The Commission adopted the findings and decision of the arbitrator. The trial court, in a memorandum opinion, stated that the findings of the Commission were supported by the evidence, and that, as a matter of law, the finding that an employee's negligence did not remove him from the purview of the act was correct. The court confirmed the Commission's decision, and Hines appeals.

■ To be compensable, an employee's injury must result from some risk connected to the employment. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 210, 437 N.E.2d 609.) Whether an act of employment contributed to the cause of the injury can be a mixed question of fact and law. The Commission's decision will be set aside only if the factual findings are contrary to the manifest weight of the evidence (*Chicago Transit Authority v. Industrial Comm'n* (1975), 61 Ill. 2d 78, 329 N.E.2d 198), or if the conclusions of law are contrary to the law of the State. See *Material Service Corp. v. Industrial Comm'n* (1973), 53 Ill. 2d 429, 292 N.E.2d 367.

The key facts, as found by the Commission, establish that claimant acted negligently in choosing the hatchway as a route to the subbasement, to avoid looking foolish to his boss after having just received his first favorable job evaluation. However, claimant clearly intended to gain entry to the subbasement solely for the purpose of fulfilling his employer's orders to reach the area between 4:55 and 5:05 p.m. so as to make the necessary adjustments to avoid causing damage to the chillers and other machinery and also to save energy dollars.

■ The question of law, therefore, is whether an employee in this factual setting has placed himself in such a position that the injury results from a risk purely personal to the employee and not incidental to or connected with what the employee has to do in fulfilling his duties. (*Fisher Body Division, General Motors Corp. v. Industrial Comm'n* (1968), 40 Ill. 2d 514, 240 N.E.2d 694.) Hines maintains that claimant "decided to do something by which only he would benefit, and something which was not for the benefit of his employer." In taking this risk, he had only his interest in mind, and the risk was not undertaken to further the interests of his employer. We do not agree.

The Commission found that claimant, although using needlessly dangerous entry into the subbasement, was acting consistent with what his employer had wanted him to do as part of his daily routine. The Commission rejected the argument that claimant's acts were purely personal. It found that claimant was acting consistently with instructions to be in the subbasement at a designated time. Thus, we reject Hines' factual argument that claimant's purpose in acting "was not for the benefit of his employer."

■ Once that well-supported factual finding is made, the legal question is whether an employee acting negligently and against the employer's orders is precluded from recovering under the act. It has long been recognized that one of the act's objectives was to do away with defenses of contributory negligence or assumed risk. Recklessly doing something persons are employed to do which is incidental to their work differs considerably from doing something totally unconnected to the work. (*Mount Olive & Staunton Coal Co. v. Industrial Comm'n* (1934), 355 Ill. 222, 189 N.E. 296.) It matters not how negligently the employee acted, if at the time he was injured he was still within the sphere of his employment and if the accident arose out of it. *Brooks Tomato Products Co. v. Industrial Comm'n* (1924), 311 Ill. 207, 142 N.E. 451.

■ Claimant here did not follow instructions to break open the glass key box, seek out security, or contact management when a problem arose. However, violating a direct order is not sufficient to remove the employee from the scope of employment as long as the employee remains within the sphere of his work. (*A.L. Randall Co. v. Industrial Comm'n* (1922), 305 Ill. 558, 137 N.E. 435; see also *Chadwick v. Industrial Comm'n* (1989), 179 Ill. App. 3d 715, 534 N.E.2d 1000.) As a matter of law, therefore claimant's negligence and failure to follow direct orders did not remove him from the scope of his employment. We hold that the Commission did not err in its findings of fact or its conclusions of law in awarding claimant benefits for his injuries.

Hines' reliance on *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 509 N.E.2d 1005, and *Curtis v. Industrial Comm'n* (1987), 158 Ill. App. 3d 344, 511 N.E.2d 866, is misplaced. In *Orsini*, the risk was not incidental to the employment since the employee was injured while working on his personal automobile during work hours, and thus, the act was of a personal nature solely for his own convenience. Here, claimant obviously was not entering the subbasement or adjusting the heating and air-conditioning unit as a matter of personal convenience or benefit.

In *Curtis* the injury did not occur in the course of his employment where, during lunchtime, the employee was pouring waste gasoline into barrels to take home for his own use. The employee in *Curtis*, unlike claimant here, was in a place and performing an act which had no connection with his duties as a truck driver, and instead was engaged in a self-benefiting activity not within the scope of his ordinary duties.

For the foregoing reasons, the judgment of the circuit court of Cook County, confirming the decision of the Industrial Commission, is affirmed, and the cause is remanded to the Commission for further proceedings pursuant to its decision.

Judgment affirmed; cause remanded for further proceedings.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.