TIMOTHY R. SAUNDERS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Beloit Corporation, Appellee).

Second District   No. 2—97—1074WC

Opinion filed November 5, 1998.—Rehearing denied January 4, 1999.

RAKOWSKI, J., dissenting, joined by RARICK, J.

John M. Popelka, of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for appellant.

Richard A. Berman, of Williams & McCarthy, P.C., of Rockford, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Timothy R. Saunders appeals from an order of the circuit court of Winnebago County confirming a decision of the Illinois Industrial Commission (Commission). Respondent/employer is Beloit Corporation. The arbitrator had denied compensation, finding the injury did not arise out of his employment with the respondent, and the Commission, with one Commissioner dissenting, affirmed and adopted the decision of the arbitrator.

The only issue is whether the finding of the Commission, that the accident based on a safety violation did not arise out of claimant's employment with respondent, was against the manifest weight of the evidence. We affirm.

On May 16, 1994, claimant's coworker, Jan Gundry, ran over claimant's left ankle with a forklift truck. Claimant testified he was walking next to and on the left side of the forklift. He was walking to the office to get his lunch and then to the break room for a 10-minute break. According to claimant, he had been walking beside the forklift for 10 or 15 feet after he got off the forklift. He had taken four or five strides. He had been sitting on the forklift prior to that. From the time he dismounted to the time of the injury, 5 to 10 seconds elapsed. Claimant had operated forklifts in the past and had been trained with regard to forklift safety. Gundry had also attended such training sessions. Claimant acknowledged there was a rule prohibiting passengers on forklifts.

David Kessler, respondent's safety administrator, testified regarding respondent's program dealing with equipment safety, including forklifts. The rule against having a passenger on a forklift was communicated to employees through training sessions, monthly safety "contacts" on different subjects, and an employee handbook that had been given to all employees. There was no emergency that required claimant to get somewhere fast at the time of the injury. The morning break was usually at 9 a.m., but the plant had a relaxed atmosphere. If an employee was doing something and missed his break, he could have it when he got done. It was not an assembly line operation.

Employee Keith Smithson, who was walking down the aisle to the rest room, witnessed the accident. He testified that he saw Gundry driving and claimant riding on the left side of the forklift. They went to make a slow right turn, and claimant stepped off and "hit his leg or foot, he went to the ground." Smithson never saw him on his two feet. While sitting on the unit, claimant was in a sidesaddle position. His legs were hanging off. His left foot was down lower and hit the ground first and got run over.

Gundry's description of the accident was similar to that given by claimant. Gundry also admitted that there is a rule against riding double on a forklift.

The claimant, Kessler, Smithson, Gundry, and labor union representative Dean Waters testified concerning the safety rule. All were aware of the rule against riding double on the forklift. Kessler testified that "everyone knew that there was a rule against riding double." Claimant testified that the rule was violated "[i]n my 17 years[,] approximately maybe 10 times"; Kessler stated there were two records of violations, 1977 and this incident, 1994; Smithson stated the rule against riding double "is a known rule in the plant" and he did not recall seeing other employees riding double in the 17 years he had worked for respondent. Grundy had had "another coworker besides Tim Saunders ride double" on his forklift and, as to supervisors riding on his forklift, stated, "for probably 14 years and probably 3 or 4 of them I would say or some of them has [sic] been on it more times." Waters, the union representative, testified employees attended safety meetings. He was aware of the rule against riding double and, in response as to whether discipline was meted out for violations, stated, "I can't answer that." As to how many times in his eight years he saw the rule violated, Waters answered, "Not very many." When asked for a number, Waters stated, "I couldn't give you a number. There wouldn't be that many times." The record also suggests that neither claimant nor Gundry reported that claimant was riding double until after a private conversation with Waters.

The arbitrator found the accident was caused by a violation of a safety rule in that claimant injured his left leg while alighting the vehicle in the way described by Smithson. The arbitrator found that the testimonies of claimant and Gundry were inconsistent, claimant was not credible, and Smithson had no reason to be biased.

> "The arbitrator further finds that the accident was caused by an activity of the Petitioner which did not arise out of his employment. Petitioner's activity in violating the safety rule and riding double on the forklift vehicle was not in furtherance of any aspect of Petitioner's employment. Riding on the forklift vehicle had nothing to do with Petitioner's job, it was not part of his job responsibilities, and it was of no benefit to the employer for Petitioner to ride double on that vehicle. The arbitrator finds that the activity of riding double on the forklift was not within the scope of the Petitioner's employment, and that it created an unreasonable risk beyond that to which Petitioner would be exposed during the course of his employment."

In states where there is a statutory defense of wilful disobe-

dience of safety rules or wilful failure to use a safety device, the defense will succeed only if (1) the employee was given actual notice of the rule and an understanding of the danger involved in its violation, (2) the rule is kept alive by *bona fide* enforcement, and (3) the employee had no valid excuse for the violation. 2 A. Larson & L. Larson, Larson's Workers' Compensation Law § 33.00 (1998) (hereinafter Larson). Illinois does not have such a statutory defense. 2 Larson § 33.10. As to misconduct apart from statutory defenses:

> "When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to the *method* of accomplishing that ultimate work, the act remains within the course of employment. Violations of express prohibitions relating to incidental activities, such as seeking personal comfort, as distinguished from activities contributing directly to the accomplishment of the main job, are an interruption of the course of employment." (Emphasis in original.) 2 Larson § 31.00, at 6—10.

"One cannot deliberately break a rule unless one in fact knows the rule exists." 2 Larson § 33.20, at 6—62. The ground most frequently relied on for rejecting the defense of a safety rule violation is the lack of enforcement of the rule in practice. 2 Larson § 33.30, at 6—66 through 6—67. In addition, the wilfulness may be negated by evidence of a plausible purpose for the employee's violation of the rule. 2 Larson § 33.40. Safety rules do entail some inconvenience, discomfort, or loss of speed as the price of increased safety of operation. 2 Larson § 33.40.

▮ In a workers' compensation proceeding, the claimant has the burden of proving that the injury arose out of and in the course of his employment with respondent. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 480, 548 N.E.2d 1033, 1038-39 (1989). Claimant argues that, as a matter of law, a safety rule violation may not bar recovery under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)). In Illinois, the cases turn on whether the rule violation took the claimant outside the sphere of employment, and that involves a determination by the Commission of a combined question of fact and law. *Gerald D. Hines Interests v. Industrial Comm'n*, 191 Ill. App. 3d 913, 916, 548 N.E.2d 342, 344 (1989). Whether an employee in a particular factual setting has placed himself in a position that the injury results from a risk purely personal to the employee, and not incidental to or connected with what the employee had to do to fulfill his duties, is a question of law. Once a well-supported factual finding has been

made, the legal question is whether the employee, acting negligently and against the employer's orders, is precluded from recovering under the Act. Recklessly doing something the employee was employed to do incidental to his work differs considerably from doing something unconnected with the work. *Hines*, 191 Ill. App. 3d at 917, 548 N.E.2d at 344-45.

In *Hines*, 191 Ill. App. 3d at 915-17, 548 N.E.2d at 343-45, claimant was injured while being lowered into a hatchway to get into the subbasement because he had locked his keys in the room. The Commission adopted the arbitrator's findings that claimant's acts were not purely personal and, although negligent, were within the sphere of his employment. The court upheld the Commission's decision, reasoning that, although claimant did not follow direct orders to open the glass key box, seek out security, or contact management when a problem arose, he was acting consistently with what his employer wanted him to do as part of his daily routine. The *Hines* court then stated that once this factual finding is made by the Commission then it is resolved as a matter of law that negligence does not bar recovery.

*Hatfill v. Industrial Comm'n*, 202 Ill. App. 3d 547, 560 N.E.2d 369 (1990), involved an employee jumping across a ditch in attempting to get to a car in the employer's parking lot. The court upheld the Commission's decision denying compensation under the Act. This court reasoned as follows:

"In the instant case, the Commission could have inferred that the claimant's injuries resulted from a personal risk assumed by the claimant. While the claimant's injuries were incurred upon the employer's premises and were incurred within a reasonable time after leaving his work duties, nevertheless, it is apparent that the claimant's injuries occurred while he was engaged in an activity which only benefitted himself and not his employer. Therefore, we find that the Commission's determination that the claimant's injuries did not arise out of and in the course of his employment was not against the manifest weight of the evidence." *Hatfill*, 202 Ill. App. 3d at 554, 560 N.E.2d at 373.

In *Roberts & Oake v. Industrial Comm'n*, 378 Ill. 612, 613-16, 39 N.E.2d 315, 315-16 (1942), claimant, while on his lunch break, attempted to hitch a ride by climbing onto a peddler's truck and was killed. The supreme court stated:

"[Claimant] chose a dangerous method of obtaining transportation which was not in any way identified with his employment or incidental to it. He voluntarily selected an unnecessary risk with which his employer had no connection and the risk which he chose did not arise out of his employment." *Roberts & Oake v. Industrial Comm'n*, 378 Ill. at 616, 39 N.E.2d at 316.

*Roberts & Oake v. Industrial Comm'n* was followed in *Jewel Cos. v. Industrial Comm'n,* 57 Ill. 2d 38, 42-43, 310 N.E.2d 12, 14-15 (1974).

■ In *Chadwick v. Industrial Comm'n,* 179 Ill. App. 3d 715, 716-19, 534 N.E.2d 1000, 1001-03 (1989), this court reversed the Commission's denial of benefits. The decedent was working on a scaffold 70 to 75 feet in the air without being tethered to a lifeline installed on the scaffold. Workers had attended safety meetings in which they were told to remain tethered, there was no evidence that remaining tethered was inconvenient to the workers' movements, and a worker could walk the entire length of the platform and perform all work without untethering. This court found the injury to be compensable because the employee was performing the duties for which he was hired, was not engaged in an unauthorized activity, and was not at a forbidden place. As a result, the employee was deemed to be within the sphere of employment and in fact was doing his job at the time of injury, albeit negligently.

> "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." *Martin v. Industrial Comm'n,* 227 Ill. App. 3d 217, 219, 591 N.E.2d 108, 109 (1992).

For a " 'finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent.' " *Drogos v. Village of Bensenville,* 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276, 1281 (1981), quoting *In re Application of County Collector,* 59 Ill. App. 3d 494, 499, 375 N.E.2d 553, 557 (1978). Accordingly, the reviewing court will only determine whether sufficient evidence exists to support the Commission's decision. *Cassens Transport Co. v. Industrial Comm'n,* 262 Ill. App. 3d 324, 331, 633 N.E.2d 1344, 1349 (1994).

■ Here, all the witnesses testified there was a company rule prohibiting riding double on a forklift. Although the claimant and Gundry in their first reports of the accident did not indicate they were riding double, after a discussion with the union representative, Waters, they testified both were riding the forklift. The Commission found Smithson's version of the accident to be more credible than the version testified to by claimant and Gundry. The Commission found claimant was injured getting off the forklift after having ridden on it as a passenger and that riding on it as a passenger was a forbidden activity.

There is a difference between prohibited activities that are not part of the work and prohibited methods of doing the work. In *Hines,*

the claimant was involved in a prohibited method of doing the work. In this case, claimant was involved in a prohibited activity that was not part of doing the work.

The Commission decision is not against the manifest weight of the evidence. As stated above, the Commission found that claimant's "testimony was not credible." The evidence supports the finding that there was a company rule against riding double on the forklift. A review of the record also supports a finding that the company did not condone or acquiesce in violating the safety rule. Safety meetings were held on a regular basis. As to the number of times he had seen violations, claimant testified that in 17 years he had witnessed them "maybe 10 times"; the company records showed one other violation reported besides the instant one; Smithson did not recall any other violations; and Waters could not give a number, saying, "There wouldn't be that many times."

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HUTCHINSON and HOLDRIDGE, JJ., concur.

JUSTICE RAKOWSKI, dissenting:

As the majority opinion correctly points out, Illinois has never enacted a statutory defense of safety rule violation. Thus, in determining whether an injury arose out of claimant's employment, the question is whether claimant overstepped the boundaries defining the work to be done (not arising out of) or whether the violation related to the method of accomplishing the work to be done (arising out of). See 2 A. Larson & L. Larson, Larson's Workers' Compensation Law § 31.00, at 6—10 (1997).

Claimant was within the plant on his way to the break room for a scheduled 10-minute break. As such, he was within the course and scope of his employment. The fact that he violated a company rule by riding double on the lift relates to the method used in going on a break. Thus, according to Professor Larson's rationale, claimant's injury arose out of his employment. Moreover, the cases cited by the majority do not support its position. In fact, several cases are directly contrary to the majority position.

In *Chadwick v. Industrial Comm'n*, 179 Ill. App. 3d 715, 534 N.E.2d 1000 (1989), claimant failed to use a safety line while working on scaffolding approximately 70 to 75 feet in the air. The failure to use such a safety line was in direct violation of a safety rule. The court held that claimant was performing the duties for which he was hired

and was not engaging in any work activity that was unauthorized. In reversing the Commission's denial of benefits, the court quoted from *Republic Iron & Steel Co. v. Industrial Comm'n*:

> "[W]here the violation of a rule or order of the employer takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order it cannot be then said that the accident arose out of the employment, and in such a case no compensation can be recovered. If, however, in violating such a rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule or order and recovery is not thereby barred. [Citation.] \*\*\* *[I]t does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been, if he was still acting in this sphere of his employment and in the course of it the accident arose out of it.*" (Emphasis added.) *Republic Iron & Steel Co. v. Industrial Comm'n*, 302 Ill. 401, 406, 134 N.E. 754, 755-56 (1922), quoted in *Chadwick*, 179 Ill. App. 3d at 717, 534 N.E.2d at 1001.

*Chadwick* would mandate recovery in the instant case.

In *Gerald D. Hines Interests v. Industrial Comm'n*, 191 Ill. App. 3d 913, 548 N.E.2d 342 (1989), claimant failed to follow specific instructions by failing to break open a glass key box that housed an extra key, failing to seek out security, or by failing to contact management when he locked his key in the subbasement. Nonetheless, the court affirmed the Commission's award of benefits, holding:

> "[V]iolating a direct order is not sufficient to remove the employee from the scope of employment as long as the employee remains within the sphere of his work. (*A.L. Randall Co. v. Industrial Comm'n* (1922), 305 Ill. 558, 137 N.E. 435; see also *Chadwick v. Industrial Comm'n* (1989), 179 Ill. App. 3d 715, 534 N.E.2d 1000.) As a matter of law, therefore claimant's negligence and failure to follow direct orders did not remove him from the scope of his employment." *Gerald D. Hines Interests*, 191 Ill. App. 3d at 917, 548 N.E.2d at 345.

The *Hines* court rejected the employer's reliance on *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 509 N.E.2d 1005 (1987), and *Curtis v. Industrial Comm'n*, 158 Ill. App. 3d 344, 511 N.E.2d 866 (1987), distinguishing both. In *Orsini*, claimant, who was injured while working on his personal automobile during work hours, was not subjected to a risk that was incidental to his employment. Instead, his conduct "was of a personal nature solely for his own convenience." *Gerald D. Hines Interests*, 191 Ill. App. 3d at 918, 548 N.E.2d at 345. The claimant in *Curtis*, who was injured during his lunch break while pouring

waste gasoline into barrels to take home for his own use, was not injured in the course of his employment. The *Curtis* court found that claimant "was in a place and performing an act which had no connection with his duties as a truck driver, and instead was engaged in a self-benefitting activity not within the scope of his ordinary duties." *Gerald D. Hines Interests*, 191 Ill. App. 3d at 918, 548 N.E.2d at 345. *Hines*, too, would mandate recovery in the instant case.

In *Hatfill v. Industrial Comm'n*, 202 Ill. App. 3d 547, 560 N.E.2d 369 (1990), claimant had left work and was on his way to his car when he jumped over a drainage ditch. The court held that claimant's injuries occurred while he was engaged in an activity that benefitted only himself and not his employer. Although cited by the majority, *Hatfill* is not a safety rule violation case:

> "Lastly, we consider the claimant's arguments that a knowing violation of a safety rule does not destroy the compensability of an employee's injuries and that the Commission erroneously denied the claimant benefits because of his negligence in leaving the work place. We find these arguments to be without merit. The Commission did not base its determination on either of these criteria but found that the claimant's injuries were not a result of fulfilling any duties required of his employment." *Hatfill*, 202 Ill. App. 3d at 554, 560 N.E.2d at 374.

*Jewel Cos. v. Industrial Comm'n*, 57 Ill. 2d 38, 310 N.E.2d 12 (1974), is a case very similar to the instant fact situation. The claimant was employed as an apprentice mechanic at Jewel's Melrose Park facility. The facility was fenced in and encompassed several square blocks and approximately 99 acres of land. Because the facility was so large, Jewel provided several different cafeterias and restaurants for employees to purchase meals. At the time of the accident, claimant was heading to a restaurant located several blocks from the garage in which he worked. Because of the distance, claimant rode his motorcycle, which he used to get to work. While driving to the restaurant, he was involved in an accident and injured. The Commission awarded benefits but the circuit court reversed. The supreme court reversed the circuit court and reinstated the Commission's decision, finding that, although the injury occurred during claimant's lunch break, it arose out of his employment. *Jewel Cos.*, 57 Ill. 2d at 40, 310 N.E.2d at 13.

In *Roberts & Oake v. Industrial Comm'n*, 378 Ill. 612, 39 N.E.2d 315 (1942), relied upon by the court in *Jewel Cos.*, claimant was a butcher, working for a meat packing firm in the Union Stockyards. He left the building in which he was working and started to run for a truck that was proceeding east on 45th Place. He made a jump for the

running board, lost his footing, and was killed. The supreme court specifically noted that the employer did not have exclusive control over 45th Place. The court found that, although this property was owned by the Union Stockyards Company, it was obvious that all trucks or peddlers having any business in the stockyards had a right to use this roadway. The court held that where a lunch period is not subject to the employer's control or restriction in any way, the employee is free to go where he will at that time. However, if the employee sustains an injury on a public street, the injury does not rise out of the employment. Importantly, however, the court noted that the result may be different if claimant takes his lunch break on the employer's premises:

"It cannot, logically, be contended that the employer had exclusive control over this roadway so that it would be liable for all injuries which might be sustained thereon. *If only the trucks of Roberts & Oake had use of this roadway and it was owned and supervised by the employer, the situation might be different.*" (Emphasis added.) *Roberts & Oake*, 378 Ill. at 615, 39 N.E.2d at 316.

In the instant case, claimant was on his way to the break room for a 10-minute break. As such, he was within the sphere of his employment. At no time did claimant overstep the boundaries defining the work to be done. Because the 10-minute break is clearly within the sphere of claimant's employment and because the rule he violated involved how claimant would get to the break room, it related to the method of accomplishing his work. As such, the injury arose out of and in the course of employment.

Accordingly, I would reverse the judgment of the circuit court and remand the cause to the Commission for calculation of benefits.

RARICK, J., joins in this dissent.