(No. 23544.—)

JULIUS MAZURSKY, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(THE INEEDA BLUE BAND
LAUNDRY COMPANY, Plaintiff in Error.)

*Opinion filed October 14, 1936—Rehearing denied Dec. 3, 1936.*

A. B. LITLOW, and PEREGRINE & BRUEGGER, for plain-
tiff in error.

CLYDE L. KORMAN, and RUBEN G. HORWITZ, (B. M.
STEINER, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

Julius Mazursky was employed by the Ineeda Blue Band Laundry Company (herein referred to as the company) as a laundry driver for a period of twelve years prior to his injury hereinafter mentioned. The company had some twenty drivers, each of whom was furnished by the company with a separate truck designed especially for the purpose for which it was used. No restrictions were placed upon any driver in the use of such truck for business purposes. The company maintained all the trucks, together with a private garage for the purpose of keeping them in good operating condition. At the time of his employment the garage mechanic was instructed not to do any work on private automobiles. It was the driver's duty to pick up the goods from customers, deliver them to the laundry, which was usually done by early afternoon, then wait there for calls for any late deliveries and return to the customer the goods after they were laundered. The working hours were from 7:00 A. M. to 4:00 P. M. No tools were provided the truck drivers. They had instructions in the event of a flat tire on the truck not to fix it but to call the company garage and have the company mechanic sent out to make the repairs. During the twelve-year period of his employment Mazursky had always driven to and from the laundry in an automobile owned by him and used as a family car. Some, but not all, of the other drivers went to and from their work in their own automobiles. The company did not undertake nor assume any responsibility whatever in connection with the maintenance, repair or operation of any of the personal cars of the drivers, did not carry insurance on such cars, made no financial allowance for expense of operation thereof, furnished no tires, gasoline or storage, and did not require any driver to have a personal car or to bring it to work if he had one. Ordi-

narily Mazursky kept his automobile in a public garage near the laundry building. He paid the garage bills on his own car when it was left in the public garage. On the day of the accident he was late in arriving at his work and did not take time to place his car in the garage but parked it at the curb near the entrance to the laundry. He lived about four miles north of the laundry and his route was in the same general direction and neighborhood. The evidence shows that on occasions of two, or possibly three, times a week, if there were two or more bundles to be delivered late on his route, it had been Mazursky's custom when he left the laundry to place such late bundles in his personal car, deliver them and proceed to his home without returning to the laundry, thus obviating the use of the truck and its consequent return to the laundry. Other drivers followed the same course. This practice was known to the company foreman and had never been prohibited. No limitations had ever been imposed on Mazursky as to how he was to use his truck, and he was never told not to use it when he had bundles to deliver. The evidence discloses that some of the drivers had made repairs on their personal tires and automobiles in the company's garage prior to the accident in question. Such work had been done with the knowledge of the laundry foreman. No employee had ever been instructed not to repair his car in the laundry garage. On the day of the injury Mazursky had two bundles to deliver. They were not classified as "late" deliveries. His car had not been used for any work for the company and he expected to drive it to his own home that evening. At about 1:30 P. M. on November 23, 1934, on his return with his truck in which he had been engaged in delivering and receiving laundry, Mazursky noticed there was a flat tire on his personal car. He took off the tire, brought it into the laundry garage, took the tube from the casing and made the repairs. He attempted to remove the casing from the rim but found it difficult to dislodge. An-

other laundry driver of the company offered to assist. This driver stood on one side of the rim and Mazursky on the other, each with a tool inserted between the rim and the casing and both trying to pry the casing loose. The tire tool in the hands of the other employee slipped out from the casing and struck Mazursky in his left eye, and by reason of the injury he lost the sight thereof.

The arbitrator who heard the cause found the injury sustained by Mazursky arose in the course of his employment but did not arise out of it. The Industrial Commission, on review, sustained the decision of the arbitrator. The circuit court of Cook county, upon *certiorari* brought by Mazursky, reversed the finding of the commission and found that the injury arose out of and in the course of the employment and awarded the petitioner compensation. The employer brings the case here by writ of error.

The facts here are not in dispute. The correct application of the legal principles arising therefrom is the problem to be solved.

"The words 'arising out of' and the words 'in the course of' are used conjunctively. * * * The words 'arising out of' refer to the origin or cause of the accident and are descriptive of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident takes place." (*Mueller Construction Co.* v. *Industrial Board,* 283 Ill. 148. See, also, *Arquin* v. *Industrial Com.* 349 Ill. 220, and *Ervin* v. *Industrial Com. ante,* p. 56.) Both elements must be present at the time of the accidental injury in order to justify compensation. It is not alone sufficient that the injury was received by the employee in the course of his employment but it must arise while he was acting within the duties of his employment or in some act incidental thereto. *Vincennes Bridge Co.* v. *Industrial Com.* 351 Ill. 444; *Pittsburgh Coal Co.* v. *Industrial Com.* 323 id. 54.

The Workmen's Compensation statute of Massachusetts provides compensation to a workman for "an injury arising out of and in the course of his employment." In treating the subject as to when an accident may be said to arise out of the employment, the Supreme Judicial Court of Massachusetts said in *McNicol's case*, 215 Mass. 497, at p. 499: "It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." We approved this statement in *Vincennes Bridge Co.* v. *Industrial Com. supra*. (See, also, *Central Illinois Service Co.* v. *Industrial Com.* 291 Ill. 256.) Even though the accident happens on the employer's premises, yet if it occurs while the employee is doing something there for his own personal benefit it does not arise out of his employment. *Industrial Com.* v. *Enyeart*, 256 Pac. (Col.) 314; *Board of Education* v. *Industrial Com.* 321 Ill. 23; Angerstein on Workmen's Compensation, (1930 ed.) sec. 117, p. 255.

In the case at bar the workman was engaged in repairing a tire on his automobile, the use of which was to provide a means of transportation to and from his place of employment. It was not the duty of the employer to furnish the employee transportation to and from his work nor had it assumed that function. What means the employee used to get to his work and from thence to his place of residence was a matter with which the employer was not concerned. True, the workman, with his employer's knowledge, occasionally used his automobile to make laundry deliveries on the way to his home. This, however, was for his own convenience and to save the necessity of returning to the laundry garage the truck furnished him. The use of his automobile was neither a duty of nor an incident to Mazursky's employment. The workman whose act brought about this unfortunate accident was not then acting within the sphere of his employment. He was not performing a service for his master but was acting as a volunteer. In order to warrant a recovery the injury must have originated in some risk connected with or incidental to the employment. (*Vincennes Bridge Co.* v. *Industrial Com. supra.*) The employer was not, at the time of the injury, in the exercise of supervision either of the petitioner or his fellow-servant. Neither of the two employees involved in the accident was at that time acting under the employer's orders, either express or implied. The repairing of the automobile for general use was not within the scope of Mazursky's employment. He was then performing an act of a personal nature. The injury sustained by him did not arise out of his employment. (*Vincennes Bridge Co.* v. *Industrial Com. supra; Pittsburgh Coal Co.* v. *Industrial Com. supra; Everett Hat Co.* v. *Industrial Com.* 305 Ill. 564; *International Harvester Co.* v. *Industrial Board,* 282 id. 489; *Campbell's case,* 193 N. E. (Mass.) 365; *Industrial Com.* v. *Ahern,* 162 N. E. (Ohio) 272; *Ætna Life Ins. Co.* v. *Burnett,* 283 S. W. 783; *Industrial Com.* v. *Enyeart, supra; Postal Tele-*

*graph-Cable Co.* v. *Industrial Accident Com.* 37 Pac. (2d) (Cal.) 441.) The award of compensation in this case was not warranted under the facts and the law.

The judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*