(No. 63505.—

LEONARD ORSINI, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Wilmette Texaco, Appellant).

*Opinion filed June 10, 1987.*

40

GOLDENHERSH, J., took no part.

Braun, Lynch, Smith, & Strobel, Ltd., of Chicago

(Francis J. Lynch, of counsel), for appellant.

Edward J. Kionka, of Murphysboro, and John T. Bowman, of Murges, Bowman & Corday, Ltd., of Chicago, for appellee.

CHIEF JUSTICE CLARK delivered the opinion of the court:

Leonard Orsini filed a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) (the Act), for injuries allegedly sustained while he was employed by defendant Wilmette Texaco. An Industrial Commission arbitrator found that as a result of the accidental injuries arising out of and in the course of his employment on July 3, 1981, Orsini lost 45% of the use of his right leg and 50% of the use of his left leg. Accordingly, Orsini was awarded compensation benefits. The Industrial Commission reversed the arbitrator's award, finding that Orsini had failed to prove that he sustained accidental injuries arising out of and in the course of his employment. Orsini appealed to the circuit court of Cook County, which set aside the decision of the Industrial Commission. The Industrial Commission Division of the appellate court, with one judge dissenting, affirmed the circuit court (142 Ill. App. 3d 540), and thereafter declared that the instant case involved a substantial question warranting consideration by this court. Wilmette Texaco filed a petition for leave to appeal in this court pursuant to our Rule 315(a) (94 Ill. 2d R. 315(a)), and we granted its petition.

The issue presented in this appeal is whether the injury complained of arose out of and in the course of Orsini's employment.

The material facts in this case are not in dispute. Leonard Orsini was employed as an automobile mechanic at the Wilmette Texaco service station in Wilmette, Illi-

nois. On July 3, 1981, while awaiting the delivery of parts needed for the completion of a brake job he was performing for his employer, Orsini began to adjust the carburetor on his personal automobile, which was parked in one of Wilmette Texaco's service bays. The engine in his car was running. Orsini was standing in front of his car, leaning over to adjust the carburetor, when the car suddenly lurched forward, pinning both of his legs between the car and a work bench, and fracturing both of his femurs. It is these injuries which form the basis of Orsini's workers' compensation claim.

At the hearing before the arbitrator, Orsini testified that his car was a 1967 Oldsmobile 442, a "collector's item" which he used only in the summertime. In the wintertime, the car was stored in a garage. Orsini stated that he had acquired the car secondhand in 1976, and that he had completely rebuilt the car's transmission in the spring of 1981, because its torque converter "blew up." Orsini denied having removed the parking mechanism, but acknowledged his removal of all parts of the transmission which activate the car forward and backward. Orsini stated that he had put four "junkyard" transmissions into the car since 1976.

Orsini further testified that throughout the six-year period he had worked at Wilmette Texaco, his employer routinely permitted him to work on his personal automobile. On many of these occasions, he worked on his car during his normal 8 a.m. to 5 p.m. shift when business was slow or there was no station work to be done. On other occasions he would work on his car after he had completed the regular workday.

Peter Van Houten, the owner and manager of Wilmette Texaco, testified that he knew Orsini was working on his personal automobile on July 3, 1981, and that Orsini had done so on previous occasions with Van Houten's knowledge and permission. He stated that Or-

sini would work on his own car approximately once a month, 90% of the time after work hours, but occasionally during the workday while waiting for parts or when work was slow.

The record reveals that after the accident the car was taken to North Shore Automotive Transmission, where the transmission was inspected and repaired by William Dominic, the owner of North Shore Transmission. However, prior to Dominic's inspection and repair, the transmission was also inspected by an automotive engineer, Robert Tarosky, who prepared a written report detailing the results of his inspection. Tarosky's written report, together with the pictures of the transmission taken during his inspection, were admitted into evidence. At the hearing before the arbitrator, Tarosky testified that the absence of the retaining pin, a "failsafe" device designed to prevent a car from slipping gears from park to drive, was the cause of the accident. Dominic subsequently corroborated Tarosky's conclusion as to the cause of the accident. How or why the retaining pin was absent from the transmission was never determined.

The Industrial Commission reversed the arbitrator's award, finding that Orsini's accident did not arise out of his employment. The Commission found that Orsini's injury arose from a risk peculiar to his car and not to his employment as a mechanic with Wilmette Texaco. It further found that no benefit in the form of additional knowledge, experience and skill as a mechanic accrued to Wilmette Texaco as a result of the repair activities Orsini was engaged in at the time of the accident. Lastly, the Commission determined that knowledge and consent of the employer to the activity out of which the harm arises does not convert a personal risk case into an employment case.

Wilmette Texaco challenges Orsini's characterization of the issue presented in this appeal as being one of law.

If undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of such issue presents a question of fact, and the conclusion of the Industrial Commission will not be disturbed on review unless it is against the manifest weight of the evidence. (*Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 337; see also *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 275.) Since more than one reasonable inference can be drawn from the undisputed facts concerning the issue on appeal, we reject Orsini's argument that this case presents an issue of law to be determined by the reviewing court, and we will not reverse the decision of the Industrial Commission unless we find it to be contrary to the manifest weight of the evidence. We will not discard permissible inferences drawn by the Commission based upon competent evidence merely because other inferences might be drawn by us. *Brewster Motor Co. v. Industrial Com.* (1967), 36 Ill. 2d 443, 448-49.

The purpose of the Illinois Workers' Compensation Act is to protect the employee against risks and hazards which are peculiar to the nature of the work he is employed to do. (*Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, 517.) An injury is compensable under the Workers' Compensation Act only if it "aris[es] out of" and "in the course of" the employment. (Ill. Rev. Stat. 1983, ch. 48, par. 138.2.) The phrase "in the course of" refers to the time, place, and circumstances under which the accident occurred. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 366.) Although both parties to this appeal agree, and the Industrial Commission apparently found, that Orsini was in the course of his employment as a mechanic at the time of the accident, this fact alone, however, is insufficient to make the injury compensable. (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1, 5.) The

words "arising out of" and "in the course of" are used conjunctively, and therefore both elements must be present at the time of the accidental injury in order to justify compensation. (*Mazursky v. Industrial Com.* (1936), 364 Ill. 445, 448.) The question we must consider, therefore, is whether Orsini's injuries arose out of his employment at Wilmette Texaco.

An injury "arising out of" one's employment may be defined as one which has its origin in some risk so connected with, or incidental to, the employment as to create a causal connection between the employment and the injury. (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1, 4; see also *Chmelik v. Vana* (1964), 31 Ill. 2d 272.) For an injury to have arisen out of the employment, the risk of injury must be a risk peculiar to the work or a risk to which the employee is exposed to a greater degree than the general public by reason of his employment. (*Chmelik v. Vana* (1964), 31 Ill. 2d 272, 277-78.) A risk is incidental to the employment when it belongs to or is connected with what the employee has to do in fulfilling his duties. (*Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 514, 516; see also *Schwartz v. Industrial Com.* (1942), 379 Ill. 139, 144.) If the injury results from a hazard to which the employee would have been equally exposed apart from the employment, then it does not arise out of it. (*Greene v. Industrial Com.* (1981), 87 Ill. 2d 1, 4.) Thus, an injury is not compensable if it resulted from a risk personal to the employee rather than incidental to the employment. *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, 517; see also *Rogers v. Industrial Com.* (1980), 83 Ill. 2d 221; *Jones v. Industrial Com.* (1980), 78 Ill. 2d 284.

In our judgment, the determination as to whether Orsini's injury arose out of his employment at Wilmette Texaco is governed by our earlier decisions in *Mazursky*

*v. Industrial Com.* (1936), 364 Ill. 445, and *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, wherein this court held that the risk of injury in repairing or working on one's personal automobile is not ordinarily related or incidental to the duties for which he is employed, even though the work may be done on the employer's premises. (See also *Board of Education v. Industrial Com.* (1926), 321 Ill. 23.) In *Mazursky*, an employee suffered injuries on his employer's premises while attempting to repair a wheel which he had taken off his personal automobile. In *Fisher Body*, the employee was injured when a battery in his car exploded while he was attempting to recharge it in his employer's parking lot. This court denied compensation in both cases on the grounds that when the employee in question undertook the repair of his own automobile, he assumed risks which were strictly personal in nature and which were totally unrelated either to the duties of his employment or the condition of his employer's premises.

In the instant case, the risk of harm to Orsini was not increased by any condition of the employment premises. Unlike the situations presented in *Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, and *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, cited by the appellee, where the harm to the employee came about as a result of a defect in the employer's premises, the injury here came about solely as a result of a defect in Orsini's own car—the missing retainer pin. It is undisputed that the malfunction on Orsini's car could have occurred anytime or anywhere, and only coincidentally occurred at the Wilmette Texaco service station. Nor is there any suggestion here that the tools provided by Wilmette Texaco and used by Orsini in repairing his car were in any way defective. Furthermore, under the terms of his employment, Orsini was

not required to work on his personal automobile during working hours, and Wilmette Texaco could just as well have permitted him to do nothing while he was waiting for the additional brake parts needed to complete the job he was performing for his employer. As in *Mazursky*, Orsini's car served no purpose relative to his employment duties at Wilmette Texaco. Thus, we find here that Orsini voluntarily exposed himself to an unnecessary danger entirely separate from the activities and responsibilities of his job, and was performing an act of a personal nature solely for his own convenience, an act outside of any risk connected with his employment. Clearly, there is no evidence here of a causal connection between Orsini's employment at Wilmette Texaco and the accidental injury.

Appellee argues that an employee who is expressly permitted by his employer to do personal work of the same type as that which he is employed to do on the employer's premises during work time for which he is being paid is employed in an activity which is "incidental" to his employment, so that an accidental injury sustained during work hours "arises out of" his employment. We reject this argument. Employer acquiescence alone cannot convert a personal risk into an employment risk. (See *Yost v. Industrial Com.* (1979), 76 Ill. 2d 548; *Lynch Special Services v. Industrial Com.* (1979), 76 Ill. 2d 81.) This court has consistently held that where the injury results from a personal risk, as opposed to a risk inherent in the claimant's work or workplace, such injuries are not compensable. (See, *e.g., Branch v. Industrial Com.* (1983), 95 Ill. 2d 268 (claimant suffered back injuries while removing his coat); *Rogers v. Industrial Com.* (1980), 83 Ill. 2d 221 (claimant's automobile, being driven by his wife, malfunctioned and struck claimant); *Jones v. Industrial Com.* (1980), 78 Ill. 2d 284 (claimant closed car door on his hand); *Fisher Body Division, Gen-*

*eral Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514 (claimant's car battery exploded); *Williams v. Industrial Com.* (1968), 38 Ill. 2d 593 (claimant choked on a donut during meal break); *Schwartz v. Industrial Com.* (1942), 379 Ill. 139 (claimant ate contaminated food in a nearby restaurant).) Conversely, in those cases where liability was imposed, the injury to the employee occurred as a direct result of a defect in the employer's premises or was directly related to the specific duties of employment. (See, *e.g., Archer Daniels Midland Co. v. Industrial Com.* (1982), 91 Ill. 2d 210 (claimant injured in employer's ice covered parking lot); *Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331 (claimant injured while engaged in a recreational activity occurring on the premises during an authorized lunch break); *Chicago Extruded Metals v. Industrial Com.* (1979), 77 Ill. 2d 81 (claimant injured while showering in locker room provided by employer); *Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361 (claimant injured during lunch break in employer's swimming pool used by claimant for health reasons); *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272 (claimant injured during lunch break on employer's roof); *Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429 (claimant injured as a result of dangerous condition in employer's parking lot).) These cases are clearly distinguishable from the instant case, where the injuries here resulted from assumed risks, strictly personal and totally unrelated to the duties of employment or the conditions of the employer's premises.

Lastly, we note that, in support of his argument, appellee refers this court to the decisions of several of our sister States which have held contrary to our position in *Mazursky* and *Fisher Body.* (See, *e.g., Parker v. Travelers Insurance Co.* (1977), 142 Ga. App. 711, 236 S.E.2d 915.) We are not bound by these decisions (*Gorham v.*

*Board of Trustees of the Teachers' Retirement System* (1963), 27 Ill. 2d 593, 599), and we decline to follow them since we find *Mazursky* and *Fisher Body* dispositive of the issue presented in this case. (See *Northwestern University v. Industrial Com.* (1951), 409 Ill. 216.) Nor has appellee advanced any cogent reasons why *Mazursky* and *Fisher Body* should be overruled.

It was the responsibility of the Industrial Commission to determine from the evidence in this case whether the danger which caused the injury to the claimant was peculiar or incidental to his employment. In light of this court's holding in *Mazursky* and *Fisher Body*, we cannot say that the Industrial Commission's finding that the claimant's injury, caused by a malfunction in his personal automobile, did not arise out of his employment is against the manifest weight of the evidence.

For the reasons set forth, the judgments of the appellate and circuit courts are reversed and the decision of the Industrial Commission is confirmed.

*Judgments reversed;*
*Industrial Commission confirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.