FOSTER McGAW HOSPITAL OF LOYO-
LA UNIVERSITY OF CHICAGO, et al.,
Plaintiffs–Appellees, Cross–Appellants,

v.

BUILDING MATERIAL CHAUFFEURS,
TEAMSTERS AND HELPERS WEL-
FARE FUND OF CHICAGO, LOCAL
786, Defendant–Appellant, Cross–Appel-
lee.

Nos. 90–2014, 90–2098.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1991.

Decided Feb. 12, 1991.

Rehearing and Rehearing En Banc
Denied March 8, 1991.

Ronald J. Hennings, Raymond E. Clutts, Neil J. Greene, Paul A. Grabowski, Hayt, Hayt & Landau, Evanston, Ill., for plaintiffs-appellees.

Anthony Pinelli, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

After the end of his shift on November 3, 1987, Anthony McGinty and a friend set to work on their employer's premises repairing a Bobcat (a small tractor with a hydraulic lift in front) to get it ready for the snow season. The Bobcat slipped into gear and pinned McGinty against the wall. Fifteen days later McGinty died of the injuries he had received. Foster McGaw Hospital and its medical practice group (collectively the Hospital) incurred about $90,000 in charges during the effort to save McGinty. Their only source of repayment is McGinty's insurance benefits, which he assigned to them. If the Hospital thought itself lucky that McGinty was insured under two plans, it has been disabused. Each carrier denied responsibility, concluding that the other should pay.

One potential source of payment was the workers' compensation carrier of Thomas M. Madden Company, McGinty's employer. The other was the Building Material Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago, Local 786, which underwrote a welfare plan covered by the Employee Retirement Income Security Act (ERISA). These sources are exclusive: the workers' compensation carrier is responsible for injuries in the course of employment, and the welfare fund for other injuries. The workers' compensation carrier concluded that the injury, which occurred after hours while McGinty was working on a machine he owned jointly with his friend, did not occur during the course of employment. The welfare fund concluded that because other employees said that they had seen the Bobcat on the employer's premises for several weeks being used in the employer's business, the injury was indeed in the course of employment.

One might suppose that this is an occasion for an "inverse interpleader": the provider of medical care sues both carriers, observes that one or the other owes it a debt, and leaves them to fight things out. Fed.R.Civ.P. 11 would not bar such a step, even if the provider thinks it knows which carrier ought to pay, any more than it bars the assertion of inconsistent positions in whipsaw cases under the tax laws. See *Centel Communications Co. v. CIR*, 920 F.2d 1335 (7th Cir.1990). In whipsaw cases, as in normal interpleaders, the nominal plaintiff is a bystander to a fight among others, and it satisfies its duty by taking care to restrict the list of parties to the genuine contestants.

Joining both underwriters is easier said than done, however. ERISA supplies jurisdiction for suit against the welfare fund. 29 U.S.C. § 1132(a)(1)(B); see *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir.1991). Illinois law does not allow a provider of medical care to sue a workers' compensation carrier. See Ill.Rev.Stat. ch. 48 ¶ 138.5 (specifying who may recover under the workers' compensation act), *id.* at ¶ 138.21 (forbidding assignment of claims). So the Hospital would have to arrange for McGinty's estate to do so. Such a suit by the estate, supported neither by diversity of citizenship nor by ERISA, could not readily be appended to the Hospital's suit against the welfare fund. Lack of common parties would make the invocation of ancillary jurisdiction difficult, even under the Federal Courts Study Committee Implementation Act of 1990, § 310 of which authorizes pendent party jurisdiction (renamed "supplemental jurisdiction"). See Pub.L. 101–650, 104 Stat. 5089.

Unable to see an attractive way to bring the workers' compensation carrier into the litigation, the Hospital sued only the welfare plan, which defended by arguing that its decision is neither arbitrary nor capricious. Such a standard of review creates the possibility that no one will pay in close cases. Each carrier may say that the other is responsible, and neither decision will be arbitrary. The provider will go without payment, despite the supposition that one

carrier or the other is contractually obliged to pay. When two plaintiffs must file separate suits in separate courts—the estate against the workers' compensation carrier in state court under state law, the provider against the welfare fund in federal court under ERISA—the likelihood of this unhappy outcome goes up. Dovetailed plans are common, and disputes about the location of the boundary between them certain to recur. Congress might think it beneficial to allow consolidated litigation when a plan subject to ERISA interlocks with coverage governed by state law. Such litigation is as appropriate as the interpleaders authorized by 28 U.S.C. §§ 1335, 1397, and 2361, and Fed.R.Civ.P. 22. No "inverse interpleader" law is on the books, however, and the providers did not try to bring the workers' compensation carrier into the suit. The hospital has not argued that the standard of review differs in whipsaw cases. As the case stands, we must assess the responsibilities of the welfare fund the same way we would if it were the sole potential source of payments.

The district court tried this case on stipulated facts after both sides waived the right to present testimony. Its first opinion, 1989 WL 152616, 1989 U.S. Dist. LEXIS 14310, says that the fund's denial of coverage was arbitrary and capricious. The court found that McGinty and friend bought the Bobcat for their personal use and that none of Madden's supervisors was aware of its presence on the firm's premises. Their after-hours repair work was accordingly not in the course of employment, making the welfare fund rather than the workers' compensation carrier liable. See *Orsini v. Industrial Commission*, 117 Ill.2d 38, 109 Ill.Dec. 166, 509 N.E.2d 1005 (1987); *Fisher Body Division of General Motors Corp. v. Industrial Commission*, 40 Ill.2d 514, 240 N.E.2d 694 (1968); *Mazursky v. Industrial Commission*, 364 Ill. 445, 4 N.E.2d 823 (1936), holding that the workers' compensation system does not cover injuries that occur while servicing private cars on the employer's premises.

■ On rehearing the district court shifted ground. 1990 WL 51466, 1990 U.S. Dist. LEXIS 4015. The fund pointed out that the judge did not mention evidence in the fund's possession that the Bobcat had been on the employer's premises for weeks and had been used in the employer's business. Whether or not the statements made to the fund's investigator were true, it argued, a decision based on such evidence is not arbitrary or capricious. Apparently agreeing with this submission, the court retracted its first opinion and substituted a new one engaging in *de novo* review on the authority of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). After reaffirming its conclusion that the fund is the responsible insurer, the court denied the Hospital's request for attorneys' fees because the fund's position was not without support. It explained: "The court has not held that the trustees' action was clearly erroneous. On *de novo* review the court reached a different factual determination than the trustees; the trustees' factual determination was not without some basis." Each side has appealed: the fund argues that *de novo* review is inappropriate and the Hospital that it should receive attorneys' fees.

*Firestone* does not require *de novo* review in every case.

> Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers.... A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.

489 U.S. at 111, 109 S.Ct. at 954. Have the trustees of the welfare fund been given such discretionary power? Even if they have not, is there perhaps a difference between the standard of review when the trustees construe the terms of the plan and the standard when they make operational decisions? The fund does not urge the latter possibility, so we leave it for another day, as we did in *Petrilli v. Drechsel*, 910 F.2d 1441, 1446–47 (7th Cir.1990). Whether review is deferential thus turns on the language of the plan, which the district court did not mention. In this court the parties agree that review is deferential, and that the district judge erred in disregarding language in this plan granting the trustees the power to construe the

plan's terms. Part IV Art. I § 1(b) of the trust instrument gives the trustees authority

[t]o determine all questions arising in the administration, *interpretation and application* of the Health and Welfare Plan, including questions of eligibility ...

Emphasis added. Under *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990), and *Exbom v. Central States Health & Welfare Fund*, 900 F.2d 1138, 1141–42 (7th Cir.1990), both announced after the district court's decision, language of this stripe requires deferential review.

■ Although the district judge's first opinion concluded that the Hospital prevails even if the fund receives the benefit of deferential review, the judge later thought better of that view. His second opinion implies, if it does not hold, that deferential review leads to victory for the fund. That conclusion is inescapable. The fund sent an investigator to interview Madden's employees, several of whom said that they had seen the Bobcat on the premises for weeks, occasionally being used in the firm's business. The Hospital sought to undermine this by pointing to the bill of sale, which showed that McGinty and friend bought the Bobcat only three days before the accident. The fund's investigator tried to interview the seller, who refused to cooperate; although the lawsuit gave the Hospital access to compulsory process, it elected not to present the seller's testimony. It was not "arbitrary" or "capricious" to credit the testimony of McGinty's fellow employees over the implications of the bill of sale, and to infer that the Bobcat's repair would have inured to the employer's benefit, drawing the accident within the scope of workers' compensation coverage. Perhaps the document was created after the fact; perhaps delivery took place before the date of sale shown in the paper.

The fund's trustees considered the evidence and chose one version over another. State courts usually resolve disputes about the scope of employment in favor of coverage by the workers' compensation program; the trustees reached the same conclusion. *De novo* review might lead to a different conclusion, but the district judge was right to recognize in his second opinion that deferential review requires a court to respect the trustees' resolution of such conflicts. E.g., *Pokratz v. Jones Dairy Farm*, 771 F.2d 206 (7th Cir.1985).

Foster McGaw Hospital has been caught in the midst of a dispute between insurers. It is entitled to payment yet receives none. Such an outcome produces unease, and perhaps it should produce legislation along the lines we have discussed. But in this one-on-one suit, Hospital against welfare fund with the fund's decision entitled to deference, the outcome is foredoomed. The judgment is reversed on the fund's appeal, and the case is remanded with instructions to enter judgment for the fund. The Hospital's appeal is dismissed as moot.