MICHAEL KARASTAMATIS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Annunciation Greek Orthodox Church, Appellee).

First District (Industrial Commission Division)    No. 1—98—2327WC

Opinion filed June 15, 1999.—Rehearing denied July 14, 1999.

James C. Serkland, of Serkland & Muelhausen, of Chicago, for appellant.

James L. Kaplan, of Kaplan & Sorosky, Ltd., of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant was hired by a Greek Orthodox church to work at the church's annual picnic. At 11:30 p.m., as the picnic was winding down, claimant went on break and joined picnic guests and other employees who were doing a Greek dance. While dancing, claimant fell and

injured his knee. Under the circumstances, did the injury arise out of claimant's employment? Because we find that the risk of injury from dancing was personal to claimant and neither peculiar to his job nor a risk to which he was exposed to a greater degree than the general public, we conclude that the Industrial Commission properly determined that his injury did not arise out of his employment.

## FACTS

Claimant, Michael Karastamatis, was hired by employer, Annunciation Greek Orthodox Church, to work at the church's annual picnic, to be held in the church's parking lot. On Thursday, Friday, and Saturday, claimant put up tents, drove a van, cleaned, and stocked beer and food. On Sunday, July 28, the last day of the picnic, claimant served food and beer. Claimant took a break at 2 p.m. He resumed work and took his next break at 11:30 p.m. At this time, the picnic was winding down and claimant asked John Pronus, the church's vice president and the chairman of the picnic, whether he could join other workers and guests who were dancing. Pronus told claimant "Go ahead." Claimant then joined the other dancers and apparently became the leader. He performed a Greek dance wherein he kicked his leg forward hitting his hand on his foot in front, kicked his leg behind him hitting his hand on his foot behind, and then flipped around. Claimant danced like this for five to six minutes and then slipped and fell backwards to the ground, injuring his knee. Claimant testified that the parking lot had oil spots on it. He offered the testimony of Dexter Allen to corroborate this. Allen stated that he observed claimant fall. He also observed the area in which claimant was dancing and stated it contained paper cups and plates, and soil and grease stains.

Paul Gebhard testified on behalf of employer. He was a volunteer at the picnic and observed claimant leading others in a Greek line dance. He saw claimant's knee give way and claimant fell. After claimant fell, Gebhard examined the area and found no oil or other unusual substances on the ground.

Employer also presented testimony of another volunteer, Dr. Peter Poulos, who spoke to claimant on July 26, two days before the accident. Claimant was limping and stated his leg hurt. Dr. Poulos agreed to look at claimant's knee. Claimant was wearing an Ace bandage and when he removed it, claimant's knee was all banged up. Claimant said that he had banged it up while working as a bouncer and wrestler.

Claimant then offered testimony to show that his knee was not previously injured. First, Mary Mayweather, a nurse's aide who worked for claimant's mother, stated that she observed claimant walking around his mother's house in shorts and that he was not wearing an

Ace bandage nor did she see any injuries. Another individual, whom claimant worked out with, testified that just prior to July 26, she observed claimant doing leg squats and presses with 500 to 600 pounds without difficulty. Finally, Mike Ecklund, claimant's neighbor and an individual with whom claimant trained for wrestling, testified that he observed claimant doing exercises, including squats, with 400 pounds, which claimant did without difficulty.

Claimant filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1996)) for the injuries to his left knee. The arbitrator found that claimant failed to prove he sustained an accidental injury arising out of and in the course of his employment. The Industrial Commission (the Commission) did not directly address whether claimant's injury arose in the course of employment, but nevertheless affirmed the arbitrator's finding that claimant's injury did not arise out of his employment. On administrative review, the circuit court of Cook County confirmed.

## ANALYSIS

### I. Arising Out Of Employment

■ In order for claimant to recover, he must demonstrate that his injuries arose out of *and* in the course of his employment. "In the course of" refers to time, place, and circumstances of the injury. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987). For an injury to arise out of the employment:

> "[T]he risk of injury must be a risk peculiar to the work *or* a risk to which the employee is exposed to a greater degree than the general public by reason of his employment. *** [A]n injury is not compensable if it resulted from a risk personal to the employee rather than incidental to the employment." (Emphasis added.) *Orsini*, 117 Ill. 2d at 45.

See also *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 550 (1991); *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483 (1989); *Pryor v. Industrial Comm'n*, 266 Ill. App. 3d 497, 499 (1994). Thus, in order for an injury to arise out of one's employment, the risk must be: (1) a risk to which the public is generally not exposed but that is peculiar to the employee's work, or (2) a risk to which the general public is exposed but the employee is exposed to a greater degree. A peculiar risk is one that is peculiar to a line of work and not common to other kinds of work (*Ohio Building Safety Vault Co. v. Industrial Comm'n*, 277 Ill. 96, 109 (1917)) and one that is not common to the general public. *Mueller Construction Co. v. Industrial Board*, 283 Ill. 148, 154 (1918). One is exposed to a com-

mon risk to a greater degree than the general public when the circumstances of the employment "make the danger of receiving a[n] injury \*\*\* an exceptional risk." *Central Illinois Public Service Co. v. Industrial Comm'n*, 291 Ill. 256, 265 (1920).

In *Orsini*, claimant was employed as an automobile mechanic at a service station. While awaiting the delivery of parts necessary for completion of a brake job claimant was performing for employer, claimant began to adjust the carburetor on his personal car, which was parked in one of the service bays. The engine in the car was running. Claimant was standing in front of the car and leaning over to adjust the carburetor when the car suddenly lurched forward, pinning his legs against a work bench and fracturing both of his femurs. Finding that the injury did not arise out of claimant's employment, our supreme court held that simply because employer acquiesces or allows the conduct, this "alone cannot convert a personal risk into an employment risk." *Orsini*, 117 Ill. 2d at 47. Second, the court concluded that claimant's risk was not increased by any condition of his employment or the employment premises; it was the car malfunction that caused his injuries and this could have occurred anywhere at any time. According to the court, "[claimant] voluntarily exposed himself to an unnecessary danger entirely separate from the activities and responsibilities of his job, and was performing an act of a personal nature solely for his own convenience, an act outside of any risk connected with his employment." *Orsini*, 117 Ill. 2d at 47. The court pointed out that it has consistently been held that "where the injury results from a personal risk, as opposed to a risk inherent in the claimant's work or workplace, such injuries are not compensable." *Orsini*, 117 Ill. 2d at 47. In sum, the court stated that Orsini's injuries "resulted from [an] assumed risk[ ], strictly personal and totally unrelated to the duties of employment or the conditions of the employer's premises." *Orsini*, 117 Ill. 2d at 48.

Similarly, in the instant case, claimant's injuries did not result from some risk or hazard peculiar to his employment. Claimant was hired to set up and stock the picnic and serve beer and food. He was not hired to dance. The risk of injury from dancing was not peculiar to claimant's work or incidental to his employment "because it did not belong to, nor was it in any way connected with, what [claimant] had to do in fulfilling his contract of service." *Schwartz v. Industrial Comm'n*, 379 Ill. 139, 147 (1942). See also *Orsini*, 117 Ill. 2d at 45. Claimant voluntarily exposed himself to an unnecessary danger entirely separate and apart from the activities and responsibilities of his job. His act of dancing was a personal act, solely for his own convenience; an act outside any employment risk. Further, claimant pre-

sented no evidence to show he was at an increased risk of injury from dancing because he was working at a picnic sponsored by a Greek church where his duties were to stock the picnic and serve food and beverages. Simply put, the risk of injury claimant was exposed to while dancing was neither peculiar to nor increased by the nature of his employment.

Claimant does not seriously dispute the aforesaid rule. Rather, he contends that we should nevertheless find that his injuries arose out of his employment because he was injured while on break and, therefore, the personal comfort doctrine is applicable. The crux of claimant's argument appears to be that the requirement that an injury must arise out of one's employment is not applicable in personal comfort cases. In support of his position he relies on *Union Starch, Division of Miles Laboratories, Inc. v. Industrial Comm'n*, 56 Ill. 2d 272 (1974), and *Eagle Discount Supermarket v. Industrial Comm'n*, 82 Ill. 2d 331 (1980). We disagree.

■ The personal comfort doctrine provides:

"Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the \*\*\* method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment." 2 A. Larson & L. Larson, Workers' Compensation Law § 21.00, at 5—5 (1998).

The Illinois Supreme Court has added:

"[I]f the employee voluntarily and in an unexpected manner exposes himself to a risk outside any reasonable exercise of his duties, the resultant injury will not be deemed to have occurred within the course of the employment. [Citation.] The employer may, nevertheless, still be held liable for injuries resulting from an unreasonable and unnecessary risk if the employer has knowledge of or has acquiesced in the practice or custom." *Eagle Discount Supermarket*, 82 Ill. 2d at 340.

See also *Union Starch*, 56 Ill. 2d at 277. The personal comfort doctrine generally applies when a claimant is on break and sustains an injury. It encompasses acts such as eating and drinking, obtaining fresh air, seeking relief from heat or cold, showering, resting, and smoking. 2 A. Larson & L. Larson, Workers' Compensation Law § 21.10, at 5—5 (1998).

■ Although we agree that the personal comfort doctrine may be relevant, its application here would only establish that claimant is considered to be in the course of his employment even though he was on break and dancing. The doctrine is an "in the course of" concept; it has no application to "arising out of" employment. Here, the Commis-

sion's denial of benefits was based upon its finding that claimant's injury did not arise out of his employment. As such, application of the personal comfort doctrine does not in any way alter the Commission's decision that claimant's injury did not arise out of his employment.

Further, taken to its logical extent, claimant's argument would signify that one on break is in a better position to recover workers' compensation benefits than an individual injured while working. For example, in *Brady*, claimant was injured while standing behind a drafting table while working. The court found that his injuries did not arise out of his employment. However, if claimant's argument prevailed, if that same individual, standing behind the drafting table while on break and perhaps eating, was injured he would recover simply because he was on break. This clearly is not the law. We note that the court in *Orsini* cites to *Williams v. Industrial Comm'n*, 38 Ill. 2d 593 (1968), and *Schwartz v. Industrial Comm'n*, 379 Ill. 139 (1942). In both of these cases, claimants were on break and were injured or became ill as a result of eating, yet the court held that their injuries were not compensable because they did not arise out of their employment. Thus, even in personal comfort cases, claimants must demonstrate both arising out of and in the course of. See also *All Steel, Inc. v. Industrial Comm'n*, 221 Ill. App. 3d 501 (1991); *Ealy v. Industrial Comm'n*, 189 Ill. App. 3d 76 (1989).

Nor do the cases cited by claimant support his position. The crucial issue in both cases is whether claimants' injuries occurred in the course of their employment. Thus, both are readily distinguishable. In *Union Starch*, claimant took a break to have a soda. He opened a window and stepped out onto an adjoining roof for some fresh air. According to claimant, it was the employees' practice to go on roofs and fire escapes to get air. Claimant took a few steps on the roof, then it gave way and he fell to the ground. The court stated that the "critical question" before it was whether claimant's injuries occurred "in the course of" his employment. In addressing "arising out of," the court stated that it was reasonably clear the Commission had sufficient evidence to find the injuries arose out of the employment because the premises were hot and stuffy. "The Commission could reasonably infer that the cause of the injury was related to the employment environment and not a hazard to which [claimant] would have been equally exposed apart from his employment." *Union Starch*, 56 Ill. 2d at 276. The court concluded the premises was a causative factor and the employment increased claimant's risk of exposure.

Unlike *Union Starch*, it was not the employment environment or premises that caused claimant's injury in the instant case. The Com-

mission specifically found claimant "did not establish that oil spots were present at the spot where he fell, or that his fall was caused by the presence of the oil spots." It then noted that the arbitrator found claimant's testimony not credible and it concurred in that determination. We cannot say that the Commission's decision finding that the premises did not cause claimant's injury is against the manifest weight of the evidence. It was its prerogative to assess the credibility of the witnesses. Finally, we note that the *Orsini* court distinguishes *Union Starch* in the same manner we distinguish it from the instant case—that the condition in *Union Starch* causing claimant's injury was a condition of the employment environment. See also 2 A. Larson & L. Larson, Workers' Compensation Law § 21.21(b), at 5—13 through 5—15 (1998) (detailing that injuries occurring from a danger inherent in the work environment or due to a defect on the employer's premises are compensable even though employee is on break).

In *Eagle Discount Supermarket*, claimant was injured while playing Frisbee on a nighttime lunch break. The store manager let the employees into the parking lot and turned on the parking lot's lights so the employees had sufficient light to play. Again, the crucial question was whether claimant's injuries occurred "in the course" of his employment. The court stated that even if the claimant's conduct was unreasonable, employer "knew, acquiesced and possibly participated in the employees' *routine* games." (Emphasis added.) *Eagle Discount Supermarket*, 82 Ill. 2d at 340-41.

*Eagle Discount Supermarket* likewise does not assist claimant. The court does not state that when the personal comfort doctrine applies, claimant need not demonstrate his or her injuries arise out of the employment. In fact, the opinion reiterates that claimant must show both arising out of and in the course of. The focus of the *Eagle Discount Supermarket* case is on "in the course of" employment; the opinion neither raises nor discusses the issue of "arising out of" employment. Moreover, *Eagle Discount Supermarket* is cited by *Orsini* with approval. Finally, *Eagle Discount Supermarket* is distinguishable from the instant case on the facts. There is no evidence in the instant case that it was the church's practice to allow its employees, working the annual picnic, to dance on break. For employer's acquiescence to amount to in the course of, the activity must be a practice, habit, or custom. See 2 A. Larson & L. Larson, Workers' Compensation Law § 22.12, at 5—100 to 5—101 (1998) ("the course of employment does not embrace every spontaneous or unprecedented frolic that might be undertaken on the premises"; rather, "the activity must be shown to have achieved some standing as a custom or practice either in the industry or in this particular place"). See also *Union Starch*, 56 Ill. 2d

at 277-78; 2 A. Larson & L. Larson, Workers' Compensation Law § 22.11, at 5—93 (1998). Likewise "[e]mployer acquiescence alone cannot convert a personal risk into an employment risk." *Orsini*, 117 Ill. 2d at 47. In *Orsini*, employer's acquiescence was far greater than in the instant case. There, employer often allowed claimant to work on his personal car during normal business hours. The *Orsini* court nevertheless stated that this was insufficient to render the risk an employment risk.

Because the Act utilizes "arising out of" and "in the course of" conjunctively, both elements must be present for claimant to be entitled to compensation. See *Orsini*, 117 Ill. 2d at 45. Even assuming, *arguendo*, that claimant's injuries occurred in the course of his employment, this is not sufficient to award compensation. Claimant must also show his injury arose out of his employment, that is, he must show the injury occurred as a result of some risk incidental to his employment. There is no evidence that the conditions of the employment or the premises caused claimant's injury nor is there any evidence that claimant was at an increased risk. Therefore, the Commission's decision finding claimant's injuries did not arise out of his employment is not against the manifest weight of the evidence.

## II. Cross-Appeal

On cross-appeal employer contends that, if this court affirms the Commission's decision that no compensable injury occurred, then employer shall be entitled to recoup from claimant $8,800.44 which apparently was the amount paid to claimant for temporary total disability benefits and medical benefits. Employer contends that it was error for the circuit court to deny entry of judgment in its favor. In support of this contention, employer relies on section 19(g) of the Act and *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469 (1994). For the following reasons, we conclude the contention is without merit.

Section 19(g) provides in pertinent part:

> "Except in the case of a claim against the State of Illinois, either party may present a certified copy of the award of the Arbitrator, or a certified copy of the decision of the Commission when the same has become final, *when no proceedings for review are pending*, providing for the payment of compensation according to this Act, to the Circuit Court of the county in which such accident occurred *** whereupon the court shall enter a judgment in accordance therewith." (Emphasis added.) 820 ILCS 305/19(g) (West 1996).

At the time the circuit court denied employer's motion for recoupment, review proceedings were pending *and* are presently pending. As such, any claim pursuant to section 19(g) is premature.

More importantly, *Illinois Graphics Co.* does not stand for the proposition that section 19(g) will enable an employer to recoup benefits paid to an employee. On the contrary, the decision specifically holds that any such action shall be a common law action. The supreme court agreed with the circuit court that section 19(g) does not, as a matter of law, provide employers or their carriers with a right to recover temporary total disability benefits paid to an unentitled employee. *Illinois Graphics Co.*, 159 Ill. 2d at 477, 482, 494. It so held because an award or decision that *"provide[s] for the payment of compensation benefits"* is the *only* award or decision that can be reduced to judgment. (Emphasis in original.) *Illinois Graphics Co.*, 159 Ill. 2d at 480, 481. Recoupment, restitution, or reimbursement, even if "awarded" by the Commission, is not a decision providing for payment of benefits. And, while section 19(g) does state that both employer and employee may seek relief thereunder, it is only employer who pays compensation benefits. Therefore, seeking reimbursement from an employee cannot fall within section 19(g)'s dictates. Rather, an employer may seek recovery under the common law doctrine based on voluntary payments of benefits made by mistake. *Illinois Graphics Co.*, 159 Ill. 2d at 482.

Based on *Illinois Graphics Co.*, should employer desire to seek reimbursement from claimant, the proper remedy would be to file suit in the circuit court based on common law principles. There is no authority under the Act that would allow the Commission, the circuit court, or this court to award such credit in these proceedings.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.